599 So.2d 951 (1992)
J.C. ORMOND a/k/a Simon a/k/a J.C. Sanders
v.
STATE of Mississippi.
No. 89-KA-0221.
Supreme Court of Mississippi.
April 15, 1992.
Rehearing Denied June 17, 1992.
*953 Leslie C. Gates, Meridian, for appellant.
Michael C. Moore, Atty. Gen., Jackson, Jack Brooks Lacy, Jr., Asst. Dist. Atty., Brandon, for appellee.
Before DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
PRATHER Justice, for the Court:
J.C. Ormond was indicted by the grand jury of Lauderdale County on July 28, 1988, for the felony of capital rape of a child under the age of fourteen under section 97-3-65[1] of the Mississippi Code and as an habitual offender under section 99-19-83. After conviction by a jury, the court held a hearing on the issue of recidivism and found Ormond to be a recidivist under section 99-19-83. The court imposed a sentence of life in the custody of the Mississippi Department of Corrections without any possibility of parole.

I.
The appellant assigns twelve issues which have been consolidated as follows:

1. The court erred in admitting evidence of gonococcal disease seized *954 from the defendant's person pursuant to a search warrant.

2. The court erred in allowing Dr. Kim to testify as to her medical findings.
3. The court erred in excluding the testimony of witness Doris Wilson.
4. The court erred in not giving a lesser-included-offense jury instruction.
5. The comments made by the prosecutor during closing argument were prejudicial and the objection thereto should have been sustained.
6. The court erred in denying the motion for a new trial.
7. The court erred in overruling defendant's objection to the proof of recidivism.
The fifty-nine year old defendant, J.C. Ormond, testified he had known Nona Henderson[2] since about 1984 when her mother had moved out of the house and left Henderson and her children with nothing. He helped Henderson move into a housing project. After he was released from jail in 1986, he and Henderson began a relationship which he said included sexual intimacy. He testified that the relationship continued during January and February of 1988. According to Ormond, he did not suffer from gonorrhea in January or February 1988.
On February 14, 1988, Henderson asked him if he would keep her two children, Kathy, eight years of age, and Gregg, ten years of age. He agreed, and went to Henderson's house about 6:00 p.m. When Ormond arrived, Henderson's sister, a female friend, Ormond's grandson, and his girlfriend, were at the house. Ormond sent them to buy some beer while he stayed with Kathy and Gregg.
Ormond then took Kathy and Gregg to get some ice cream and returned home. Gregg fell asleep on the living room floor while Kathy sat on the couch watching television. Ormond allegedly then raped eight-year-old Kathy.
At trial, Kathy, using anatomical dolls to aid her testimony, described in detail how Ormond raped her three times. At first, she told him to stop, but he put his hand over her mouth and told her to shut up. Ormond threatened to kill Kathy and her mother if Kathy told of the rape.
To the contrary Ormond testified that he took Kathy and Gregg to get some ice cream. They played some games and then returned to Henderson's house after about an hour. Gregg went to bed and Kathy made a pallet on the floor in the living room. Ormond said when he got out of the shower, he went to bed and did not get up until Henderson came home about 11:00 p.m. or midnight. Ormond testified, over objection, that he had not raped Kathy.
About a month after Valentine's day, Henderson noticed a strong odor about Kathy. She took Kathy to the clinic to see Dr. Mary Krafty. The doctor diagnosed Kathy as having gonorrhea. Kathy then told her mother what Ormond had done to her. Henderson stated that she, herself, did not have gonorrhea during 1988, but was tested for it.
Louis Robbins, a detective sergeant with the Meridian Police Department, helped detective Lee Currie obtain a search warrant to obtain a specimen from Ormond to test for gonorrhea. When they arrested Ormond, they Mirandized[3] him and read the waiver form to him because he said he could not read. All his rights were explained to him and he signed the waiver form. Ormond told them he "did not mess with the little girl," but he would not give a written statement. He told them the last time he had been at Kathy's house was on February 14, 1988, and explained he had taken the two children for ice cream. Ormond told the authorities that when Henderson came home, Gregg, Kathy and he were all in bed together, and that Henderson came in and got into bed with the three of them.

*955 II. DISCUSSION OF THE ISSUES

1. The court erred in admitting evidence of gonococcal disease seized from the defendant's person pursuant to a search warrant.
The defendant was arrested sometime during the late day of March 18, 1988, a Friday. The next day, March 19, a Saturday, the search warrant was executed and Dr. Kim took a gonorrhea smear for testing from Ormond pursuant to the search warrant. Ormond's initial appearance was held on the following Monday, March 21, 1988, when he was also appointed an attorney. On October 3, 1988, the court held a hearing on the defendant's motion to suppress results of the gonorrhea test obtained pursuant to a search warrant. After hearing testimony from Dr. Kim as to the procedure used to examine Ormond, and Detectives Currie and Robins concerning the procurement of the search warrant, and from Circuit Judge Larry Roberts who issued the warrant, the court overruled the motion to suppress.
Ormond claims that the evidence obtained on that Saturday prior to his having been afforded an initial appearance should have been suppressed because the search violated his right to be free from unreasonable search and seizure the evidence thus constituted the fruit of an illegal search. Furthermore, he asserts, the evidence should have been suppressed because it was obtained in violation of his right to the assistance of counsel. This issue is made up of several sub-issues and is sub-divided below.

a. Delay in Initial Appearance
Ormond argues that the circuit court judge was available to procure a search warrant on Saturday and was, therefore, also available to provide him with an initial appearance. He contends this delay is, in itself, grounds for suppressing the evidence obtained from the gonorrhea smear taken pursuant to the search warrant.
The Uniform Criminal Rules of Circuit Court Practice provide for initial appearances under Rule 1.04 which states: "Every arrested person shall be taken before a judicial officer without unnecessary delay... ." Ormond relies upon the concurring opinion authored by Justice Robertson, joined by four other justices, in Nicholson v. State, 523 So.2d 68, 76 (Miss. 1988), construing "without unnecessary delay" under rule 1.04 to mean:
[w]hen custody, booking, administrative and security needs have been met, there is but one possible excuse for delay: lack of access to a judge. In assuring this fact, principled policy demands that the judge be considered just as accessible for the defendant's initial appearance as for procuring a search warrant in a felony investigation. The valid (state law) rules in the field read together prohibit law enforcement from taking advantage of the unavailability of a judicial officer to procure evidence or unfair advantage which would likely become inaccessible after initial appearance.
(See also Willie v. State, 585 So.2d 660, 669 (Miss. 1991)).
Recently, this Court has noted that an initial appearance must occur within forty-eight hours after arrest to comply with the "without unnecessary delay" requirements of rule 1.04. Hansen v. State, No. 89-DP-0823, slip op. at 5, n. 1, (Miss. Sept. 11, 1991) (1991 WL 178407) (citing County of Riverside v. McLaughlin, 500 U.S. ___, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991)). However, according to another recent decision of this Court, Veal v. State, 585 So.2d 693, 698-99 (Miss. 1991), an unnecessary delay does not void a pre-appearance confession as long as the authorities give Miranda warnings and the suspect gives a waiver. Thus, a delay cannot constitute per se reversible error, even when a defendant gives evidence prior to the delayed appearance.
In the case sub judice Ormond was afforded an initial appearance without unnecessary delay when no interrogation of the defendant was involved as here. Objective evidence, like gonorrhea smears, is not subject to the same analysis as a confession. Ormond gave no inculpatory statements after he was Mirandized and formally *956 waived his rights. He only stated he had not "messed" with the little girl. He also signed a rights waiver the night he was arrested. This sub-issue lacks merit.

b. Defendant's Sixth Amendment and Article III, § 26 Right to 
Counsel had Attached at the Issuance of the Search Warrant
Ormond now contends he was entitled to both his sixth amendment right to counsel and the Mississippi constitutional right to counsel during the issuance of the search warrant and during the smear-testing performed pursuant to the search warrant.
The testimony is in dispute as to whether Ormond requested counsel during any of these proceedings. Detective Robins testified at the suppression hearing that the defendant did not request counsel at any time during any of the going to or coming from the gonorrhea test. According to Detective Currie, Ormond did not request counsel at any time during the interrogation or at any time during the gonorrhea test. At trial, however, while Detective Robins said Ormond did not request an attorney before or after his rights were read, Detective Currie said he believed at some point during the interview Ormond asked for an attorney and the interview was stopped. Ormond also testified he asked for an attorney after his rights were read to him, but the policeman said he did not have to have an attorney. Ormond waived his fifth amendment rights by signing a formal waiver prior to questioning.
Denial of the right to counsel "will result in reversal of a subsequent conviction only where it is shown that the accused experienced some untoward consequence flowing directly from denial of counsel." Wright v. State, 512 So.2d 679, 681 (Miss. 1987). Under both the United States and the Mississippi constitutions, an accused is entitled to be assisted by counsel during criminal proceedings instituted against him. See U.S. Const. amend. VI; Miss. Const. Art. III, § 26 (1890). "These rights are identical and differ only as to the time when each attaches." Williamson v. State, 512 So.2d 868, 875 (Miss. 1987).
The sixth amendment right to counsel attaches once the state begins criminal proceedings by any means. At a pretrial proceeding, however, the law requires presence of counsel only if the proceeding constitutes a critical stage. Id. A critical stage arises at any confrontation in which the results might affect the course of the later trial and in which the presence of counsel might avert prejudice at trial. Coleman v. State, 592 So.2d 517, 520 (Miss. 1991); Williamson, 512 So.2d at 875 (citing United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967)).
Under Mississippi law, the right to counsel attaches earlier than does the sixth amendment right. Williamson, 512 So.2d at 876; Page v. State, 495 So.2d 436, 439 (Miss. 1986). This right attaches "once the proceedings against the defendant reach the accusatory stage." Williamson, 512 So.2d at 876; Page, 495 So.2d at 439. The "accusatory stage" is defined by Mississippi law to occur when a warrant is issued or, "by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit." Miss. Code Ann. § 99-1-7 (1972). This right to counsel "attaches at the point in time when `the initial appearance under Rule 1.04 ... ought to have been held. ...'" Veal, 585 So.2d at 699 (emphasis added). However, the defendant must be able to show some adverse effect or prejudice to his ability to conduct his defense before denial of this right to counsel constitutes reversible error. Williamson, 512 So.2d at 876.
The Indiana Supreme Court addressed this very issue in McClain v. State, 274 Ind. 250, 410 N.E.2d 1297, 1302-03 (Ind. 1980), wherein the court said:
Had appellant been subjected to interrogation after his arrest, he would clearly have had the right to the presence and advice of counsel. Miranda v. Arizona, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Beck v. State, (1968) 250 Ind. 276, 235 N.E.2d 699. The right to counsel at such point is available as a *957 safeguard for the privilege against self-incrimination. Clearly the [penis] swab emission test does not involve attempts to get testimony or assertions from the person examined, and there is not need for counsel to be present to protect that privilege. Schmerber v. California, [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)]. Had appellant been subjected to a lineup he would have been entitled to the presence of counsel. United States v. Wade, (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The right to counsel at such point exists in order to safeguard the right at trial to confront the identification witnesses. Persons subjected to swab emission tests should not experience special difficulty in probing, testing and otherwise challenging through cross-examination or contrary evidence, the results of such tests. Such tests are not critical stages of the proceedings and there is no right to the presence and advice of counsel during them.
Under the circumstances of this case, Ormond had waived his fifth amendment rights on Friday. His Mississippi constitutional right to counsel attached when he was arrested. Regarding the sixth amendment right to counsel, this Court adopts the McClain reasoning and does not consider the swab emission test a "critical stage;" therefore, there was no right to the presence and advice of counsel during these proceedings under the sixth amendment. This sub-issue is without merit and does not require reversal.

c. The Treatment for Gonorrhea Violated Ormond's Right to Privacy 
and Right to Prove He Did Not Have Gonorrhea as Part of His 
Defense
The defendant asserts that his defense was hampered by the state's taking him to the health department for treatment of his gonorrhea, thereby depriving him of the opportunity to show at trial that he did not have gonorrhea at the time of trial and had not been treated for it. He contends, therefore, he could not have given it to the victim.
The state, in the case before this Court, contends the state's interest in limiting the spread of an infectious disease among a closely confined jail population outweighs any privacy interest Ormond may have had in resisting treatment for his gonorrhea. The state asserts that it has a vital interest in protecting the inmate population from contagious and infectious diseases, and further comments that if the state had not secured treatment for this disease, the defendant would have cause to complain of the lack of treatment.
On March 29, 1988, Ormond was taken to the Lauderdale County Health Department and treated for gonorrhea. David Stephenson, Ormond's appointed counsel at the time, testified he had not been notified of this treatment. Ormond contends that approximately three weeks before he was tested for gonorrhea, he himself had gone to the Greater Meridian Health Clinic and was diagnosed by a Dr. Binion as having a urinary tract infection. Ormond contends this examination did not show gonorrhea and that the treatment prescribed would not have cured any gonorrhea. Therefore he asserts that since he did not have gonorrhea at the time of the first treatment by Dr. Binion, he could not have given it to Kathy. Dr. Binion's testimony, however, did not rule out that Ormond may have had gonorrhea at the time he examined him. He stated that the absence of a visible discharge did not mean Ormond was not infected with gonorrhea, and that he had not tested him for the disease. Additionally, Ormond did not resist the treatment, but had complained of a urinary problem after he had been arrested.
Regarding a privacy concern, in Zaire v. Dalsheim, 698 F. Supp. 57 (S.D.N.Y. 1988), aff'd, 904 F.2d 33 (2d Cir.1990), the prisoner alleged in part an invasion of his privacy interest by the forcible administration of inoculations for diphtheria-tetanus. The court noted the inoculation was administered solely for the protection of the prisoner and other inmates, and not for purposes such as illicit punishment or nonconsensual psychotherapy. Zaire, 698 F. Supp. at 60, n. 3. As to the prisoner's claim that his right of privacy had been violated, the court held that the defendant had not identified *958 a protectible privacy interest and that, even if he had, it would have been superseded by the state's interest in prisoner health. Zaire, 698 F. Supp. at 60.
In Dunn v. White, 880 F.2d 1188, 1197 (10th Cir.1989), the court held that the nonconsensual testing for the human immuno-deficiency virus (HIV), without more, did not violate the fourth amendment rights of prisoners. The court recognized that the government's special needs in operating a prison served a legitimate penological interest and outweighed the prisoner's fourth amendment-based privacy expectations. Dunn, 880 F.2d at 1194-95 (citing Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987); Bell v. Wolfish, 441 U.S. 520, 537, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979)).
After a determination that the state's interest outweighs the prisoner's privacy interest, the court still must determine if the method chosen is a "productive mechanism." Dunn, 880 F.2d at 1196. Employing the United States Supreme Court's balancing test in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Dunn court balanced "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Dunn, 880 F.2d at 1196. The court ultimately found HIV-testing permissible and not in violation of fourth amendment or privacy interests.
In the case sub judice, the state asserts a compelling interest in protecting inmates at the jail from a communicable disease and in treating and providing for the health of inmates. The treatment here was given by the health department, a licensed health-care provider, in the normal course of its operation. In this situation the state's interests outweigh the privacy interests of the defendant, and the method chosen to administer the treatment for gonorrhea was a proper mechanism. This sub-issue does not have merit.

d. The Magistrate Who Issued the Search Warrant Was Not Neutral 
and Detached.
The essence of this sub-issue derives from the fact that the circuit court judge who issued the search warrant, Judge Larry Roberts, was the son of Velda Roberts, a Lauderdale County Welfare Department employee, who was present during the issuance of the warrant.
Under this state's and the federal guidelines, for a search warrant to be valid it must be issued by a neutral and detached magistrate. Bevill v. State, 556 So.2d 699, 713 (Miss. 1990); Lockett v. State, 517 So.2d 1317, 1323 (Miss. 1987) (citations); McCommon v. State, 467 So.2d 940, 942 (Miss. 1985). The magistrate cannot merely act as a rubber stamp for the police. McCommon, 467 So.2d at 942.
In the case at hand, the record does support the finding that the judge was neutral and detached. The fact that he was at the home of his mother, who worked for the Welfare Department, when the warrant was issued, did not taint his neutrality. He stated he relied upon what the officers told him and what the affidavit contained. Therefore, the lower court did not commit error in admitting the evidence of the gonococcal disease seized from Ormond pursuant to the search warrant.

2. The court erred in allowing Dr. Kim to testify as to her medical findings.

a. Results of Gonorrhea Test
Ormond complains the chain of custody was not properly established as to the gonorrhea lab test. Further, Dr. Kim should not have been allowed to testify as to the diagnosis and lab results, as she was not qualified as an expert in laboratory procedures used in analyzing the culture. Lastly, he asserts the report was strictly hearsay and should have been excluded.
Dr. Kim testified as to her qualifications, the exam she conducted on the defendant, and that the test smear was taken to the laboratory by nurse Joiner. There was no further chain of custody established by way of any testimony from any laboratory personnel or from the nurse herself.
*959 The rule of evidence governing the requirement of authentication or identification holds that the: "condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Miss.R.Evid. 901(a). The advent of the current rules of evidence has not changed the rule that "the proponent must satisfy the trial court that there is no reasonable inference of material tampering with or (deliberate or accidental) substitution of the evidence"; this state's law has never required a proponent of evidence to produce every handler of the evidence. Butler v. State, 592 So.2d 983, 985 (Miss. 1991).
This case presents no evidence of alteration or substitution or tampering with the gonorrhea test at any time. Under the abuse-of-discretion standard, although the chain may not have been thoroughly demonstrated, in the absence of any contention of alteration or tampering, the trial court did not abuse its discretion in admitting the laboratory results of the gonorrhea test.
As to the contention the report was hearsay, evidence rule 803(6), governing records of regularly conducted activity, stands as an exception to the hearsay rule.[4] In Butler v. State, 245 So.2d 605 (Miss. 1971), a pre-rules case cited by the appellant, the testifying physician relied upon the diagnostic opinion of other physicians who did not testify; the testifying physician did not, as in this case, rely upon a routine laboratory report. Cf. Sipe v. Farmer, 398 So.2d 1325, 1327-28 (Miss. 1981) (physician appropriately based testimony on hospital records, X-rays, scene of injury, and his own experience and medical knowledge). Contra Spears v. State, 241 So.2d 148 (Miss. 1970) (case, pre-dating current rules of evidence, holding that testimony regarding lab report not personally conducted denies confrontation right). But see Spears, 241 So.2d at 149-51 (Robertson, J., dissenting) (records of regularly conducted business activity, such as hospital records, should be admitted).
The laboratory report was part of the diagnosis which Dr. Kim relied upon in routinely diagnosing gonorrhea. It was admissible under rule 803(6). This sub-issue is without merit.

3. The court erred in excluding the testimony of witness Doris Wilson.
Ormond complains that the trial court improperly excluded Doris Wilson's testimony regarding conversations with Henderson. Ormond alleges the court should have admitted the statements as co-conspirator's testimony under evidence rule 801(d)(2)(E), which states that admissions by co-conspirators do not constitute hearsay. According to Ormond, witness Wilson's excluded testimony included co-conspiratorial statements that would have impeached the testimony of Henderson, Kathy's mother. Ormond states in his brief:
Doris Wilson spoke with [the victim and her mother], and she agreed to say that she was in the Henderson's house at the time that Kathy was supposedly raped. This agreement was made by Ms. Wilson despite the fact that she did not *960 believe that she was in the house at the time.
... .
... . The excluded portion of the testimony of Ms. Wilson certainly supports a finding that at least parts, if not all, of the Hendersons' testimony was false, and that they had some sort of motive to present false testimony.
The record reveals that Doris Wilson, sister of Nona Henderson, testified as a defense witness. Wilson had previously, falsely told law enforcement officers that she was in the house with Ormond and the two children. In fact, Wilson was at work.
Defense counsel attempted to elicit from Wilson the substance of conversations she had had with her sister, Henderson. Defense counsel asked witness Wilson about "any ... requests [that] were made to [her] about [her] testimony concerning this case." Wilson testified that, on her own, she gave the false information to law enforcement officers to "protect the children" from being taken away from their mother by the welfare department. Wilson emphasized that she took this action without any plan or design in concert with the children's mother.
Defense counsel asked, "What they asked you to say, was it the truth?" The state objected, and defense counsel asked to proffer the testimony outside the jury's presence. The proffered testimony provided no additional testimony on this issue. Amidst other hearsay testimony, which the court excluded, Wilson again stated that she unilaterally decided to lie about her presence in the house in order to protect her niece. The trial court specifically found: "The ruling of the Court will be the same. The witness has testified that nobody made her or asked her to say anything, so therefore, ... your record is made."
Upon examination of the record and the rule cited by the appellant, Ormond's complaint on this issue displays no merit.
Ormond misrepresents the record. While Ormond contends that Doris Wilson agreed with Nona Henderson to lie about Wilson's presence in the house, Wilson's testimony, both before the jury and on proffer, unequivocally shows that she acted unilaterally, forming no agreement with Henderson. On direct and on proffer, Wilson's testimony showed no "conspiracy." The supposed testimony, which Ormond claims should have come before the jury, does not exist in the record. Without reaching any legal issue Ormond's allegation of error fails as a matter of fact.
In sum, by misreading the record, Ormond presents the court with a complaint devoid of merit. The trial court did not err in excluding portions of Doris Wilson's testimony.

4. The court erred in not giving a lesser-included-offense jury instruction.
The defendant acknowledges that no lesser included jury instruction was submitted to the judge for consideration, but contends, nevertheless, that the court should have granted one on its own motion. The lesser included offense contended to have warranted an instruction is child-fondling, found in section 97-5-23 of the Mississippi Code.[5]
A lesser-included-offense instruction is proper only if the record supports finding an evidentiary basis for the instruction. Mease v. State, 539 So.2d 1324, 1330 (Miss. 1989); Lee v. State, 469 So.2d 1225, 1230 (Miss. 1985); Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984). Such instructions should not be indiscriminately granted, Mease, 539 So.2d at 1330, nor should they be based upon pure speculation, Fairchild v. State, 459 So.2d 793, 801 *961 (Miss. 1984); Mease, 539 So.2d at 1330. Under the appropriate standard:
a lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Mease, 539 So.2d at 1330 (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985)).
Under the circumstances in this case, not only was no lesser included instruction submitted to the court, but the lesser included offense of child-fondling is not warranted under the facts of this case. This issue is not meritorious.

5. The comments made by the prosecutor during closing argument were prejudicial and the objection thereto should have been sustained.
The appellant contends that the state's argument was highly prejudicial and calculated to appeal to the sympathy of the jury and requires reversal of the conviction. He also contends the argument that Kathy lost her virginity was not supported by the record.
The state argued, over defense objection:
Here is an eight-year-old little girl who was full of life and energy and, hopefully, still is. Here is an eight-year-old little girl who has been violated in the worst way known to our society, the worst say, by a man who is old enough to be her grandfather. Here is an eight-year-old girl who had her virginity taken away from her by this man. Here is an eight-year-old girl who contracted gonorrhea from this man. Eight years old. Here's an eight-year-old girl who no longer can choose who the first man she's going to have sexual intercourse with. That's not her choice. Here's an eight-year-old girl who may look at sex as something that is dirty and horrible and terrifying for the rest of her life.
In Davis v. State, 530 So.2d 694, 701 (Miss. 1988), the Court, citing Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956), set forth the test to be used when determining if an improper argument by a prosecutor to the jury requires reversal: the test "is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." In Alexander v. State, 520 So.2d 127, 130-31 (Miss. 1988), the Court, in a rape case, addressed the prosecution's "golden rule" type of argument wherein the female jurors were asked to place themselves in the victim's position. The Court found that, since the trial court sustained the defense's objection and admonished the jury to disregard the remark, any possible prejudice was averted and no reversal was required. Alexander, 520 So.2d at 131.
In the circumstances presented in the case at hand, although the court overruled the objection, it did admonish the jury that the comments were only argument and not evidence. Furthermore, the jury was instructed in part:
Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark.
Given the comments made by the prosecutor, the comments of the judge, and the jury instruction, this issue does not require reversal. The jury was admonished, and this Court presumes the jury did disregard the remarks.

6. The court erred in denying the motion for a new trial.
Ormond contends the trial court abused its discretion in not granting a new trial based upon his discovery, after trial, that Nona Henderson had been tested for gonorrhea on April 8, 1988, and a letter advising her of an abnormal laboratory test *962 had been sent, according to the records, on April 11, 1988. The medical records also indicated she received medication on that date. She testified at trial that she had not had gonorrhea during 1988.
A hearing was held on this motion at which time Nona Henderson testified that, when asked at the trial about whether she had gonorrhea during 1988, she had answered "no." When she visited the Greater Meridian Health Clinic on April 11, 1988, they had only discussed Kathy's having gonorrhea, not Henderson or her son, Gregg. She did acknowledge that she received treatment for gonorrhea, but so did a son and her husband.[6] According to her, the welfare department had told them they all had to be treated but she had never received notification she had gonorrhea. To the best of her knowledge, she had not actually tested positive for gonorrhea. She said that the defense attorney had come to her house prior to trial and asked if she had gonorrhea. She told him she did not but she stated she had told him that the whole family had been treated for it.
Henderson declined to waive the medical privilege, so the testimony of Dale Robertson, medical records director at Greater Meridian Health Clinic, was proffered into the record as follows:
Nona had been tested pursuant to the welfare department's request on March 30, 1988. On April 8, 1988, the test came back from the laboratory as positive for gonorrhea. The files indicated she was treated for gonorrhea and was advised that she had the disease. The letter to tell her she had an abnormal laboratory test was mailed to her April 11, 1988. The letter would not have stated what the abnormality was.
The trial court, after hearing all the testimony, denied the motion for new trial.
Newly discovered evidence warrants a new trial if the evidence will probably produce a different result or verdict; further, the proponent must show that the evidence "has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching." Smith v. State, 492 So.2d 260, 263 (Miss. 1986). The grant or denial of a new trial based on newly discovered evidence is within the discretion of the trial court, and this Court will not overrule the trial court unless it abused this discretion. Smith, 492 So.2d at 263. This Court must look at the evidence produced at the hearing on the motion for new trial to make this determination.
In the case sub judice, applying the factors set forth above, the new evidence does not warrant the granting of the new trial motion. Since the new evidence would serve only to impeach Nona Henderson's testimony, the trial court does not appear to have abused its discretion in denying the motion for new trial based upon newly discovered evidence. This issue does not require reversal.

7. The court erred in overruling defendant's objection to the proof of recidivism.
The defense objected at the bifurcated sentencing hearing to the utilization of the conviction from Alabama since the date had not been supplied in the indictment. The trial court overruled this objection. Ormond now contends the utilization of this prior conviction was error because the defense was never given a copy of this conviction during discovery. The state concedes this point, although not on the exact grounds raised by Ormond. The state concedes this case must be reversed on the habitual sentencing because the habitual portion of the indictment was faulty, and the defendant must only be resentenced according to section 97-3-65(1) of the Mississippi Code, the principal charge.
The habitual offender portion of the indictment returned against Ormond states in pertinent part:

*963 1. Convicted of possession of heroin, State Board of Corrections, Montgomery, Alabama, sentenced to serve 4 years.

2. Convicted of manslaughter, January 7, 1985 in Cause No. 946-C, Circuit Court of Lauderdale County, sentenced to serve 6 years with the Mississippi Department of Corrections.
(emphasis added). The habitual portion of the indictment was returned under Miss. Code Ann. § 99-19-83 (1972 as amended).[7]
The Mississippi Uniform Criminal Rules of Circuit Court Practice set forth the procedures to be used for proof of prior convictions in conjunction with this state's recidivist statutes:
In cases involving enhanced punishment for subsequent offenses under state statutes, including but not limited to, the Habitual Criminal Statute, Miss. Code Ann. Sections 99-19-81 and 99-19-83... .
(1) The indictment must include both the principal charge and a charge of previous convictions. The indictment must allege with particularity the nature or description of the offense constituting the previous felonies, the state or federal jurisdiction of previous conviction, and the date of judgment.

(emphasis added).
Clearly the indictment under part 1 of the habitual portion is faulty in that it does not give the date of the judgment for the heroin conviction in Alabama. Therefore, the Alabama conviction should not have been allowed to be used in the habitual sentencing portion of the trial. Without it, the prerequisite of two convictions needed under section 99-19-83 for sentencing a person as habitual offender has not been satisfied. Therefore, Ormond was not properly sentenced as habitual offender under the statute. This case is affirmed as to the conviction of rape, but must be reversed as to the sentence, which is vacated and remanded for proper sentencing on the principal charge only.
AFFIRMED AS TO THE CONVICTION; SENTENCE IS VACATED AND CASE REMANDED FOR RESENTENCING ON PRINCIPAL CHARGE ONLY.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Miss. Code Ann. § 97-3-65 (1972 as amended) provides in pertinent part:

(1) Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, shall be sentenced to death or imprisonment for life in the State Penitentiary; ...
But cf., Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (because of disproportionality and excessiveness of punishment, eighth amendment forbids death sentence for crime of rape of adult woman). See also Leatherwood v. State, 548 So.2d 389 (Miss. 1989).
[2] The names of the complainant and her family members have been changed.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The following items of evidence are not excluded by the hearsay rule, even though the declarant is available as a witness:

Records of Regularly Conducted Activity. A ... report [or] record ... in any form, of ... conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the ... report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Miss.R.Evid. 803(6) (emphasis supplied). The comment to this rule states in part:
It is important to note that the custodian as well as other qualified witnesses may testify. Thus, it is not necessary to call or to account for all participants who made the record.
... .
Rule 803(6) specifically includes diagnoses, and opinions as proper subjects of admissible entries, as well as the traditionally admissible entries pertaining to acts, events, and conditions.
Miss.R.Evid. 803(6) comment.
[5] Miss. Code Ann. § 97-5-23. Touching, handling, etc., child for lustful purposes.

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of fourteen (14) years, with or without the child's consent, shall be guilty of a high crime... .
[6] At the time of trial, her spouse resided at the same residence as she. This is the first mention of him in the record, and apparently she had just had another child just prior to this hearing. (T. 450)
[7] Sentencing of habitual criminals to life imprisonment.

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony of federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.