# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00281-COA

SHALIA MALONE A/K/A SHAILA MALONE        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/22/2022 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VICTORIA VALENCIA WASHINGTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 01/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McDONALD AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.   Shaila Malone pled guilty to failing to stop at the scene of an accident that resulted in the death of a person after she confessed to leaving the scene after her vehicle struck a pedestrian.  Malone later filed a motion for post-conviction relief (PCR), arguing that her conviction should be set aside based on newly discovered evidence and because her attorney provided ineffective assistance.  Malone claimed that evidence she discovered after her plea showed that she did not hit the person named in the indictment and that the person she actually struck was injured but not killed.  The circuit court denied Malone's motion, finding that she failed to meet her burden on her newly discovered evidence claim.  However, the

circuit court did not make specific findings or state conclusions of law regarding Malone's ineffective assistance claim. We affirm the circuit court's judgment to the extent that it rejected Malone's newly discovered evidence claim. However, we reverse and remand for the circuit court to address Malone's ineffective assistance claim.

## FACTS AND PROCEDURAL HISTORY

¶2. Just after midnight on September 10, 2017, two men—Lee Bryson and Wallace Young—were struck by vehicles on Victoria Road in Marshall County. A Computer Aided Dispatch (CAD) report, which includes 911 operators' time-stamped narrative entries, shows that multiple individuals called 911 to report the events. At 12:17 a.m., Jamonica Street called 911 and reported Bryson's body lying in the middle of Victoria Road. Street also said a "dark color Ford" was on the side of the road. Young called 911 at 12:24 a.m. and reported that he "ran over" Bryson's body "because he didn't see him" lying in the road. Young told the operator that he believed Bryson was dead, which proved to be true. Young also stated that he (Young) was driving a black Ford Taurus. After his 911 call ended, Young was struck by a car while he was standing in the road near Bryson's body. The car that struck Young did not stop. Young suffered injuries to his leg and head. An ambulance took him to a hospital in Olive Branch, and he was later transferred to a Memphis hospital.

¶3. Around noon on September 10, 2017, Malone and her father went to the Marshall County Sheriff's Department. Malone, who was twenty-nine years old at the time, waived her *Miranda* rights,[1] talked to Investigator Jason Mills, and gave a voluntary written

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

2

statement. Malone admitted that she had struck a pedestrian while driving on Victoria Road the previous night. After hitting the person, Malone drove to a "store parking lot" and called her father. She told her father that she "hit something" but "wasn't sure what it was." She "sat in the store parking lot for about 5 minutes" and then "called [her father] again because [she] was nervous and scared." Malone then drove home and went to bed. The next morning, she went to work. Malone's father called her at work and told her that they needed to go to the police station because he thought Malone had "hit a person."

¶4.     In October 2017, a Marshall County grand jury indicted Malone for failing to stop at the scene of an accident in violation of Mississippi Code Annotated section 63-3-401 (Rev. 2022). Section 63-3-401 provides that

> [t]he driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 63-3-405.[2]

*Id.* § 63-3-401(1). If the accident "results in injury to any person," a willful violation of the statute is punishable by imprisonment for thirty days to one year, a fine, or both. *Id.* § 63-3-401(3). But if the accident "results in the death of another or the mutilation, disfigurement, permanent disability or the destruction of the tongue, eye, lip, nose or any other limb, organ

---

2 Section 63-3-405 requires any driver involved in an accident that results in death, injury, or damage to another vehicle to stop, give his name and address, and show his registration number and license to the person he struck or the driver or occupant of the other vehicle. Miss. Code Ann. § 63-3-405 (Rev. 2022). The statute also requires the driver to render "reasonable assistance" to anyone injured, including taking the injured person to the hospital "if it is apparent that such treatment is necessary or if [it] is requested by the injured person." *Id.*

or member of another," a willful violation of the statute is punishable by imprisonment for five to twenty years, a fine, or both. *Id.* § 63-3-401(4). Although Malone's indictment did not specifically cite subsection (4), the indictment tracked that subsection by alleging that she "failed to stop at an accident in which she was involved, to-wit: Hitting and striking Lee Bryson and causing permanent disability or injury and or death to said Lee Bryson, as he was hit with a vehicle in violation of the provisions of Section 63-3-401."[3]

¶5.     On February 7, 2018, Malone waived arraignment and pled not guilty. However, on February 13, 2018, Malone entered a negotiated guilty plea. The circuit court accepted Malone's plea, finding that it was made voluntarily and intelligently. The court sentenced Malone to twenty years in the custody of the Department of Corrections with seven years to serve, thirteen years suspended, and five years of post-release supervision. The court allowed Malone to report to the Marshall County jail on or before March 2, 2018, and reserved a "right of review for 365 days" to enforce the sentence.

¶6.     After Malone reported and began serving her sentence, she obtained new counsel and petitioned the circuit court to review and reduce her sentence. Malone argued that newly discovered evidence showed that she did not cause Bryson's death. The State opposed Malone's petition. In January 2019, the circuit court granted Malone's petition. Although the court did not directly address Malone's newly discovered evidence claim, the court stated that information in a "public petition circulated" in support of Malone was "incorrect."

---

[3] The indictment also erroneously stated that the offense was punishable by imprisonment for one year to five years and by a fine, which was the sentencing range under subsection (4) prior to 2010. The circuit court later entered an order amending the indictment to reflect the correct sentencing range of five to twenty years.

Nonetheless, "the [c]ourt was moved to reduce [Malone's] sentence" based on "the testimony of her witnesses, especially [her] parents." The court reduced Malone's sentence to five years to serve, fifteen years suspended, and five years of post-release supervision. The court further ordered that after Malone had served one year, she could serve the remaining four years in the Intensive Supervision Program, commonly known as "house arrest."

¶7. On February 12, 2021, Malone filed a PCR motion alleging that her conviction should be set aside based on newly discovered evidence, because her plea was not made voluntarily and intelligently, and because her plea counsel provided ineffective assistance. She submitted several exhibits in support of her motion, including her own affidavit, affidavits from Jamonica Street and Kenneth Wilson, the CAD report, the coroner's report, phone records, and contemporaneous witness statements obtained by the Marshall County Sheriff's Department.

¶8. Malone's own affidavit stated as follows:

> I hit something. I wasn't sure what it was at the time. I pulled over to the store and called my daddy. He told me to go back to see what it was. I went halfway back and could not see. So I turned around and went home.
>
> The next day my dad told me we needed to go [to] the police station. . . . [Investigator] Mills told me that he knew I killed Mr. Bryson because [a blue bumper was found] at the scene.[4] He asked me why I called my dad first and not the police. [I told him] I was not sure what I hit, so I did not think I had hurt anybody to call the police.
>
> [Public defender] Kent Smith . . . never showed me discovery or any evidence against me. So I had trust what they told me. [Smith] never talked about interviewing any witnesses. . . . He told me the first [plea] offer and that since I left the scene the charges could go up. He told me I could plead guilty or go

---

[4] Malone was driving a blue Nissan.

5

to trial. But, if I went to trial the prosecutor could change the charge to murder or manslaughter. He never told me that I was not the first person to see the body or drive [past] the body on Victoria Road. He did not go over any defenses I had available to the charge. He never told me that Wallace Young was the person I hit and not [Bryson]. If I had known that I was not at fault for the charges in the indictment, I wouldn't have plead guilty.

¶9. The circuit court[5] held an evidentiary hearing, and Malone introduced affidavits and exhibits without objection from the State.[6] Malone did not call any witnesses.[7] Malone offered the affidavits of Wilson and Street, which were signed on February 11, 2021. Wilson stated that on September 10, 2017, he and Street departed from his grandmother's house in separate cars "at about 12:07 a.m." While driving on Victoria Road, Wilson had to swerve to avoid a "dead body" in the road. Wilson and Street both pulled to the side of the road and discussed that they had both seen the body. They saw a white Chevy Tahoe and a red truck further down the road on the other side of a bridge, and the red truck appeared to have on its "high beam" headlights. Neither Street nor Wilson recalled seeing a blue bumper near the body. After Street called 911, she and Wilson continued driving. Neither Street nor Wilson was ever contacted by law enforcement or Malone's original attorney.

[5] The judge who accepted Malone's plea, sentenced her, and then re-sentenced her had retired by the time she filed her PCR motion, and the district's active circuit judges all recused themselves because Malone's former counsel, Smith, had become a circuit judge for the district. Therefore, the Chief Justice appointed a special judge to hear the PCR motion.

[6] See Miss. Code Ann. § 99-39-23(4) (Rev. 2020) ("The court may receive proof by affidavits, depositions, oral testimony or other evidence and may order the petitioner brought before it for the hearing.").

[7] Six days before the hearing, Malone had subpoenas issued for Young and Street. Young was served and was present at the hearing, but Malone did not call him to testify. Street was not served and was not at the hearing.

6

¶10.    A written statement that Wendy Jones provided to Investigator Mills at 1:56 a.m. on September 10, 2017, was also admitted into evidence. Jones's statement was signed but not sworn. Jones stated that she had also seen the body in the road. She called Wallace Young to warn him about the body because Young was in a car behind Jones. According to Jones, Young "answered the phone screaming, 'I found the body, and I just got hit! They ran me over when I was looking down at the body.'" (Punctuation added).

¶11.    Phone records for Malone's father's account were also admitted into evidence. According to counsel for Malone, the records show that Malone called her father on September 10, 2017, at 12:25 a.m. and 12:27 a.m. The phone records were not authenticated by any witness or affidavit. Nonetheless, the State did not object to their admission.

¶12.    Bryson's death certificate and a document that Malone's counsel represented to be the "coroner's report" were also admitted into evidence. Both documents showed a date and time of death of September 10, 2017, at 12:17 a.m. The death certificate identified the cause and manner of death as "multiple blunt force trauma to the head and body" due to Bryson having been "struck by vehicles."

¶13.    A report written by Investigator Mills sometime after the accident was admitted into evidence. In his report, Mills stated that he asked the county coroner to send Bryson's body to Jackson for an autopsy, but the coroner refused, stating that "he was not sending the body to Jackson" because "we knew the cause of death [was] that [Bryson] was obese." Mills stated that the district attorney's office also instructed him to get an autopsy, but the coroner still refused. According to Mills, the coroner told him that the State Medical Examiner's

7

Office agreed that an autopsy was unnecessary and that the body had already been embalmed.

Regarding his interview of Malone, Mills wrote:

> [Malone] told me how the incident happened. I asked [Malone] if she saw Lee [Bryson]? She said yes about the time she hit him. [Malone] stated she went to the store called her father said she had hit something. I asked do you know what you hit? [Malone] said yea a man. I asked did you tell your father that? She said no I told him I hit something. She stated her father told her to go back and see what she hit. I asked if she went back[.] She said well I walked about a foot from the car then I went back, called my father to say I didn't see anything. I asked what she did then? [Malone] stated she drove home, took a shower, and went to bed. [Malone] stated the next morning when she got up she looked at [F]acebook and seen where Lee [Bryson] had been hit and killed. [Malone] stated she then got ready and went to work at Subway. [Malone] said she got a phone call from her father who told her to come home.

Mills's report noted that on September 11, 2017, Wallace Young also came to the Sheriff's Department to give a statement, which was recorded.

¶14. Malone also offered a ten-second video clip that showed two men fighting outside a convenience store. Malone's counsel represented that Malone's cousin received the video at some point "after [they] began to investigate," that Bryson was one of the men in the video, and that the video was taken on the night of his death. Counsel speculated that the video "tend[ed] to prove" that someone killed Bryson in a fight and then "dumped" his body in the road. Counsel speculated that the killer could have been in the red truck or white Tahoe that Street and Wilson saw that night. However, the record reveals nothing else about the brief video clip, which does not show either man sustaining any serious injury. Counsel for Malone agreed with the circuit court that her theory was "a little speculative."

¶15. After the evidentiary hearing, the circuit court entered a one-page order denying Malone's PCR motion. The court found that Malone "failed to prove by a preponderance of

8

the evidence that the additional information produced or uncovered since [her] guilty plea . . . would have changed the result of her case." The court also found that the new evidence did not "prove[] that [Malone was] not guilty of the crime for failure to stop at the scene of an involved accident" under section 63-3-401. Malone filed a notice of appeal.

## ANALYSIS

¶16. In a PCR case, the movant bears the burden of proving by a preponderance of the evidence that she is entitled to relief. Miss. Code Ann. § 99-39-23(7). "On appeal from the denial of a PCR motion, we review findings of fact for clear error and review issues of law de novo." *Waters v. State*, 309 So. 3d 39, 41 (¶3) (Miss. Ct. App. 2020). Malone argues that the circuit court erred in denying her PCR motion and that her guilty plea should be set aside (1) based on newly discovered evidence and (2) because her plea counsel provided ineffective assistance.[8]

**I.     The circuit court did not err by rejecting Malone's newly discovered evidence claim.**

¶17. Under the Uniform Post-Conviction Collateral Relief Act (UPCCRA), a court may set aside a conviction if the movant produces "evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of

---

[8] Malone makes two additional arguments. First, she argues that the circuit court applied the wrong legal standard by finding she failed to prove she was "not guilty." According to Malone, the court "inherently heighten[ed] [her] burden of proof from a preponderance of the evidence to a beyond-a-reasonable-doubt standard" by making that finding. However, the circuit court's order expressly applied the statutory preponderance of the evidence standard. The court did not err by making an additional finding that Malone failed to prove that she was not guilty. Second, Malone argues that her plea was involuntary because she received ineffective assistance from her plea counsel. This argument overlaps with her ineffective assistance claim, so we address it within our analysis of that claim.

9

justice." Miss. Code Ann. § 99-39-5(1)(e) (Rev. 2020). Nevertheless, "[i]t will . . . be [a] rare case where a defendant's knowing, intelligent, and voluntary guilty plea is vacated . . . on the basis of newly discovered evidence." *Rye v. State*, 356 So. 3d 188, 192 (¶9) (Miss. Ct. App. 2023). To prevail on such a claim, the movant "must show that the evidence 'has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching.'" *Brewer v. State*, 819 So. 2d 1169, 1172 (¶10) (Miss. 2002) (quoting *Ormond v. State*, 599 So. 2d 951, 962 (Miss. 1992)). In her brief, Malone identifies the following pieces of evidence that she "discovered" after pleading guilty: Wilson's and Street's affidavits, the brief video clip of an altercation allegedly involving Bryson, her father's phone records, Bryson's death certificate, and the coroner's report.

¶18.     Malone failed to meet her burden to prove that any of this evidence "could not have been discovered" prior to her guilty plea "by the exercise of due diligence." *Id.* Indeed, in her appellate brief, Malone expressly "concedes that her [plea] counsel could have discovered the affidavits, video, and AT&T phone records, with due diligence before her guilty plea." Malone further concedes that "this Court will probably find that due diligence would and should have uncovered this evidence before her plea." We agree with Malone that the information she obtained from Wilson and Street, her father's phone records, and the video could have been discovered by due diligence prior to her plea. Therefore, her subsequent discovery of this evidence is not a ground for post-conviction relief.

¶19.     In addition, Malone cannot show that the death certificate or coroner's report was not

10

discoverable by the exercise of due diligence. In fact, the face of Bryson's death certificate shows that it was filed on September 20, 2017, just ten days after the fatal accident and months before Malone pled guilty. Likewise, nothing in the record shows that the coroner's report was unavailable at the time of Malone's plea. Malone's newly discovered evidence claim fails for this reason alone.

¶20. Malone also cannot satisfy her burden to show that the death certificate and coroner's report were "material" and "not merely cumulative." *Id.* Malone argues that these two documents are material because both show Bryson's time of death as 12:17 a.m., and Malone claims that she struck Young or Bryson a few minutes after 12:17 a.m. However, nothing in the record shows that the time of death stated in either document was based on anything other than the time of the first 911 call reporting that Bryson's body was lying in Victoria Road. That information was also contained in the CAD report. Moreover, nothing in the record shows that Malone could not have driven down Victoria Road prior to 12:17 a.m. Accordingly, Malone cannot show that either Bryson's death certificate or the coroner's report was material and not merely cumulative. For this reason as well, the circuit court did not clearly err by rejecting Malone's newly discovered evidence claim.

## II. The circuit court erred by not addressing Malone's ineffective assistance of counsel claim.

¶21. Malone further contends that her plea counsel provided ineffective assistance by advising her to plead guilty without carefully reviewing the available evidence and investigating Malone's possible defenses to the indictment. Essentially, Malone argues that the CAD report and witness statements available at the time she pled guilty should have at

11

least indicated to her plea counsel that it was possible, or even likely, that Malone struck Young, not Bryson, or that some other vehicle struck and killed Bryson before Malone's vehicle struck him. Malone argues that such evidence would have refuted the indictment's allegations that she struck Bryson and caused his death. She argues that if she only struck Young and not Bryson, then she could not have been sentenced to more than one year in prison pursuant to Mississippi Code Annotated section 63-3-401(3).

¶22. Malone's ineffective assistance claim raises additional issues that the parties' briefs do not directly address. Although Malone's indictment alleged that she struck Bryson and caused his death, section 63-3-401(4) only required the State to prove that Malone failed to stop after she was "involved in an accident that result[ed] in the death of another or the mutilation, disfigurement, permanent disability or the destruction of the tongue, eye, lip, nose or any other limb, organ or member of another." Even if we assume that Malone struck Young and not Bryson, the State might have attempted to amend the indictment or obtained a new indictment to proceed on a different theory. For example, the State might have prosecuted Malone on the theory that she left the scene of an accident that resulted in the "mutilation, disfigurement, or permanent disability" *of Young. Id.* Alternatively, the State might have argued that Malone was "involved in [the] accident that result[ed] in [Bryson's] death," *id.*, even if her vehicle was not the first to strike Bryson and did not proximately cause his death. In other words, the evidence that Malone faults her plea counsel for failing to discover would not necessarily have absolved her of criminal liability under section 63-3-401(4), even if it might have supported possible defenses to the specific allegations of her

12

indictment. These issues and possibilities surely would have played into any decision to accept or reject a plea offer.

¶23. To prevail on a claim of ineffective assistance, the movant in a PCR proceeding must show both (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—and (2) that the movant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Moreover, "[a] voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Thomas v. State*, 159 So. 3d 1212, 1215 (¶10) (Miss. Ct. App. 2015) (quotation marks omitted). "Thus, to obtain post-conviction relief, a petitioner who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea." *Worth v. State*, 223 So. 3d 844, 849 (¶17) (Miss. Ct. App. 2017); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). "[T]o obtain relief on this type of claim, a petitioner [also] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

¶24. In addition, when we evaluate claims regarding "counsel's duty to investigate," we must also keep in mind that

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland*, 466 U.S. at 690-91. In other words, the reasonableness of Malone's plea counsel's actions must be assessed in light of Malone's prior confession to law enforcement and any additional information she provided to her attorney.

¶25. In this case, we are unable to review the circuit court's findings and conclusions regarding Malone's ineffective assistance claim because the circuit court's order made no such specific findings or conclusions. The circuit court made general findings that the evidence Malone submitted would not "have changed the result of her case" and did not prove Malone's innocence. But, as set out above, the relevant questions with respect to Malone's ineffective assistance claim are whether Malone's plea counsel provided constitutionally ineffective assistance; whether, but for any errors by counsel, Malone would not have pled guilty, *Worth*, 223 So. 3d at 849 (¶17); and whether "a decision to reject the

14

plea bargain would have been rational under the circumstances," *Padilla*, 559 U.S. at 372. The circuit court did not make findings with respect to any of those specific questions.

¶26. In cases in which a circuit court holds an evidentiary hearing on a PCR motion, the UPCCRA "requires that the court 'make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented.'" *Hughes v. State*, 309 So. 3d 542, 551-52 (¶48) (Miss. Ct. App. 2020) (quoting Miss. Code Ann. § 99-39-23(5)); *see also McVeay v. State*, 754 So. 2d 486, 491 (¶18) (Miss. Ct. App. 1999) (Bridges, J., dissenting) ("Specific findings of fact and conclusions of law, relating to each issue presented in [a PCR motion], must be made by the court if an evidentiary hearing is required."). In *Hughes*, the circuit court entered an order denying relief and specifically addressing some of the movant's claims, and we held that the court erred by failing to specifically address the movant's other claims. *Hughes*, 309 So. 3d at 551-52 (¶¶48-49). We also held that the circuit court's error required reversal and remand. *Id.* at 552 (¶49).

¶27. As in *Hughes*, we hold that the circuit court erred by failing to make specific findings of fact and expressly state its conclusions of law regarding Malone's ineffective assistance of counsel claim. While we may infer and credit "findings of fact [that] are fairly implicit in a trial court's ruling," "[w]e may not credit unspoken findings not fairly inferrable from the trial court's action." *Riddle v. State*, 580 So. 2d 1195, 1200 (Miss. 1991). Here, the circuit court did not specifically address Malone's ineffective assistance claim, and because that claim raises factual and legal issues that are distinct from Malone's newly discovered evidence claim, we are unable to infer the required findings or conclusions from the circuit

15

court's one-page order. Accordingly, we reverse and remand the case for the circuit court to specifically address Malone's ineffective assistance claim. *Hughes*, 309 So. 3d at 552 (¶49). "On remand, the court should consider all evidence [previously admitted], and, in its discretion, the court may choose to reopen and rehear the matter anew before it renders its final opinion." *Id.* at 556 (¶61).

## CONCLUSION

¶28.    We affirm the circuit court's judgment to the extent that it rejected Malone's newly discovered evidence claim. However, we reverse and remand for the circuit court to address Malone's ineffective assistance claim.

¶29.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**