# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CT-01135-SCT

*MOSES DABNEY, III AND JASON PHALO*

*v.*

*STATE OF MISSISSIPPI*

## ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | DABNEY - 10/06/94 AND PHALO - 09/30/94 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GEORGE T. HOLMES |
| | THOMAS FORTNER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | ED PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 7/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/27/98 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Moses Dabney, III and Jason Phalo were indicted by the Hinds County Grand Jury in April 1994 for the murder of Eddie Wilson, Jr. Dabney and Phalo were tried together in September 1994, and each was convicted of murder and sentenced to life imprisonment. Dabney's and Phalo's appeals were assigned to the Court of Appeals, which affirmed in both cases. Dabney and Phalo separately petitioned this Court for certiorari, which were granted. After consideration we find that both convictions must be reversed and remanded for further proceedings.

I.

¶2. On December 31, 1993, Jason Phalo, Moses Dabney, III and two other individuals were riding around Jackson. Late that afternoon they were headed south on I-55 west frontage road when they pulled into the parking lot of Cowboy Maloney's Electric City. Phalo spotted a white Chevrolet Blazer in the parking lot, which he proceeded to break into with a screwdriver and steal. Phalo drove

off in the Blazer followed by the car occupied by Dabney and the other two individuals. The Blazer belonged to Eddie Wilson, Jr., an employee of Electric City. Wilson saw his Blazer being driven away and asked a co-worker, Tye Carney, to get his car so that they could follow the Blazer.

¶3. Wilson and Carney followed the Blazer as it headed south on the frontage road, then turned right onto Northside Drive and headed west toward North State Street. The Blazer then stopped at the intersection of Northside and North State. At this time Moses Dabney got out of the trailing car and got into the Blazer on the passenger side. Carney pulled his vehicle in front of the Blazer to block it from going any further. Wilson got out of Carney's car, ran to the driver's door of the Blazer and attempted to open it. Wilson then attempted to run back to Carney's car as shots were fired from the Blazer. Witnesses differed as to which of the occupants of the Blazer was shooting. Moses Dabney was in possession of one pistol, a .380 semiautomatic, at the time of the theft of the Blazer, and Wilson's pistol, a .38, was also in the stolen Blazer. Jason Phalo and Moses Dabney departed the Blazer and ran from the scene. Wilson was hit in the back and died a short time later. Phalo and Dabney were tried together. Both were convicted of murder and received life sentences. Both of their appeals will be discussed in this opinion.

## II. Moses Dabney, III

### A.

¶4. One of the witnesses to the shooting stated that one of the persons in the Blazer wore a plaid shirt. Counsel for Jason Phalo introduced a plaid shirt into evidence at trial. Phalo's counsel elicited testimony from Jackson Police Officer Clidell Conston that Conston had obtained the shirt from Jason Phalo's mother, that Dabney had changed clothes at Phalo's house on the day of the shooting, that Conston then discussed the shirt with Moses Dabney on January 9, 1994, and that Dabney stated that he was wearing the plaid shirt on the day of the shooting. Dabney moved to suppress the statement prior to trial, alleging that he was mildly retarded and a special education student, and he could not have understood his rights sufficiently to voluntarily waive them. The circuit court heard testimony concerning Dabney's mental status from two of his teachers and a psychologist. The police officers that read Dabney his rights and took his statement also testified. The circuit court found that the State had met its burden of proof as to the voluntariness of the statements.

¶5. At trial only Dabney's statement as to the plaid shirt was introduced, and this was done by Phalo. Dabney sought to introduce at trial much of the evidence that he had introduced at the pre-trial hearing on his mental capabilities. The circuit court granted the State's motion to exclude the evidence, but stated that Dabney could call his teachers as character witnesses. Dabney was able at trial to cross-examine Officer Conston as to the circumstances surrounding the statement, including Dabney's age, whether his parents or attorney had been called before he made the statement, and whether Conston had determined that Dabney was a special education student. Dabney called at trial as character witnesses the same two teachers who had testified earlier in the pre-trial hearing on admissibility. These witnesses identified themselves during their testimony as special education teachers or teachers of exceptional students.

¶6. Dabney cites *Cole v. State*, 525 So.2d 365, 368 (Miss. 1987), which states that once

the trial court has admitted a confession into evidence, it is still within the province of the jury

to determine whether the statement is true and voluntary, and what weight and credibility should be accorded to it. *Wilson v. State*, 451 So.2d 724 (Miss. 1984); *Rhone v. State*, 254 So.2d 750 (Miss. 1971). Thus, once a confession has been admitted, "either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing] as well as any other evidence relative to the weight and credibility of the confession." *Rhone*, 254 So.2d at 754.

This Court found in *Cole* that defense counsel was able to substantially make his argument concerning the confession before the jury and there was no reversible error.

¶7. The State argued before the Court of Appeals that the statement in question was never taken up in the pre-trial suppression hearing and that evidence of Dabney's mental state was irrelevant. A review of the record contradicts this. We find that Dabney was improperly restricted in his attempt to demonstrate that the jury should accord little weight or credibility to his statement because of his mild retardation. This is not to say that all the evidence which Dabney introduced at his pre-trial suppression hearing is automatically admissible at trial. We recognize that as to the admission of evidence, a pre-trial hearing will often be a more relaxed setting than a trial. While the rule in *Cole* is controlling here, the restrictions found in the Rules of Evidence also apply to any evidence which Dabney may attempt to introduce at trial, including the evidence in question here.

B.

¶8. Dabney requested instruction DD-6, which was refused based on the objection of Phalo, Dabney's co-defendant:

> The Court instructs the Jury that the law does not compel the defendant in a criminal case to take the witness stand and testify, and no presumption of guilt may be drawn from the failure of the defendant to testify.

Dabney cites *Funches v. State*, 125 Miss. 140, 87 So. 487 (1921), in support of his argument that refusal of DD-6 was reversible error. This Court stated in *Funches* that refusal of such an instruction was not always reversible error, and could be harmless. An additional reason for reversal in *Funches* was that the State commented on Funches's failure to testify. There is no allegation of that in this case.

¶9. In this case the trial court's instruction, C-4, was granted. It stated:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving a Defendant guilty of every material element of the crime with which he is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that a Defendant is guilty. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the Jury of his guilt beyond a reasonable doubt. The Defendant is not required to prove his innocence.

¶10. The Court of Appeals relied on *Watson v. State*, 521 So.2d 1290 (Miss. 1988), where this Court dealt with the refusal of a similar instruction. This Court found in *Watson* that the trial court's

instruction "substantially cover[ed] the absence" of the defendant's proposed instruction. *Watson*, 521 So.2d at 1295. The Court of Appeals found that Instruction C-4 performed the same function in this case. C-4 is substantially similar to the instruction in question in *Watson*; the primary difference is that, in *Watson*, in addition to the language stating that the defendant is not required to prove his innocence, the *Watson* instruction added "or to put [on] any evidence at all upon the subject." *Watson*, 521 So.2d at 1295. We find that the omission of this language from instruction DD-6 did not amount to reversible error.

### III. Jason Phalo

### A.

¶11. Moses Dabney made two statements to members of the Jackson Police Department, on January 5 and 10, 1994. In the January 5 statement Dabney stated that he fired his pistol during the confrontation with Wilson, but that Phalo had hollered at him at the time, "Shoot that n-, shoot that n-." Dabney said that he fired perhaps twice, then paused, and then started shooting again. In the January 10 statement Dabney stated that both he and Jason Phalo fired the .380 pistol and that Dabney also fired Wilson's .38 pistol in the air while he was getting out of the Blazer and running. Counsel for Phalo attempted to introduce only that part of the January 5 statement, through the police officer who had taken the statement, that Dabney had been the shooter. The circuit court ruled the evidence inadmissible. Phalo argues here that the evidence was admissible under the hearsay exception of M.R.E. 804(b)(3), a statement against interest. Rule 804(b)(3) states:

> **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The Court of Appeals found that Dabney was unavailable, as he did not testify. It next found that the statement also qualified as one a reasonable man would not have made unless he believed it to be true. Last, it cited pre-Rules of Evidence cases in affirming.

¶12. Jason Phalo relies on *Lacy v. State*, 700 So.2d 602 (Miss. 1997), decided two days after the Court of Appeals affirmed Phalo's conviction. Phalo particularly quotes from *Lacy,* 700 So.2d at 607, concerning whether a "reasonable person [would] believe that the statement might have been made in good faith." Also to be considered are the circumstances surrounding the making of the statement and the notion that no reasonable person would make such a statement if it were not true.

¶13. In *Williams v. State*, 667 So.2d 15 (Miss. 1996), this Court considered whether the circuit court

had erred in admitting the statement of Chelsea Williams, the wife of the appellant. Chelsea's statement was that the appellant, who had just shot one Mr. Richardson, placed Richardson in the trunk of his car while Richardson was still alive. The appellant subsequently dumped Richardson's body at a garbage dump. Chelsea's statement further alleged that the appellant considered returning to the dump and shooting Richardson again to make sure he was dead. The circuit court found that the requirements of M.R.E. 804(b)(3) were met and admitted the statement. This Court found that after consideration of the "statement for its content and in the context in which it was given, it is clear that this statement was not such that she believed it would have subjected her to criminal liability." *Williams*, 667 So.2d at 20. This Court found particularly relevant certain factors: declarations against penal interest which inculpate others are generally considered unreliable and untrustworthy; and a close examination of all the circumstances surrounding the making of the statement is required, such as a custodial confession given under potentially coercive circumstances. In this case Phalo attempted to introduce part of Dabney's statement, which would incriminate Dabney, who made the statement as a result of custodial interrogation. The evidence appears uncontradicted that Dabney is mildly retarded and is a special education student. We also consider Dabney's second statement, which is potentially incriminating to Phalo as well as Dabney, but is inconsistent with the first statement.

¶14. This Court also noted in *Williams* that even if a statement appears admissible under 804(b)(3), it must also pass muster under the Confrontation Clause. However, in *Lacy*, 700 So.2d at 607-08, this Court found that the Confrontation Clause was not implicated where the defendant offered the statement of the declarant which incriminated the declarant and not the defendant.

¶15. We find that the circuit court did not err in excluding that portion of the January 5 statement offered by Jason Phalo. If the January 5 statement, or the portion of the statement in question, were admitted, then the rest of this statement, and the January 10 statement, would also be admissible. If there was error in excluding the evidence, it was harmless.

B.

¶16. Phalo argues that the circuit court erred in refusing instruction D-3:

> If you find from the evidence beyond a reasonable doubt that: 1) Jason Phalo did, on December 31, 1993 in Hinds County, Mississippi; 2) By act, procurement of [sic] culpable negligence; 3) Kill Eddie Wilson, Jr.; 4) While Jason Phalo was committing the crime of Grand Larceny or Auto Theft, then you may find Jason Phalo guilty of the crime of manslaughter.

The Court of Appeals found that the evidence did not support the giving of this instruction. Under *Fairchild v. State*, 459 So.2d 793 (Miss. 1984), if there was evidence to warrant the giving of the lesser included offense instruction, then it should have been given, even if the greater weight of the evidence supported the greater offense.

¶17. A review of the record shows that Jason Phalo is 6'3"; Moses Dabney is 5'6". Jason Phalo was the driver of the stolen Blazer; Moses Dabney got into the Blazer as passenger when it stopped at the intersection of Northside and North State.

¶18. In this case Jewel Davis, one of the witnesses at the intersection that day, heard gunfire and saw a young man standing by the passenger side of the door of the Blazer aiming a pistol across its hood.

Davis said that the person aiming was a young black male, shorter and with a lighter complexion than the other male in the Blazer. She saw this person aiming but did not see him firing shots. After the shooting she saw this person running away with the gun down by his side. She thought she saw the second, taller person with a gun in his hand as he was running away but she wasn't sure.

¶19. Clara Davis, daughter-in-law of Jewel Davis and a witness at the intersection, saw a person from the passenger's side of the car standing up with a gun in his hand shooting between the opening of the car door. She then saw this person running away with a gun in his hand. She though he was wearing a plaid shirt or jacket. She identified the passenger as the taller of the two. She could not give any description of the second person she saw running away with the person with the gun. Davis later reviewed a statement she had given police and stated that she felt that one of the suspects was taller than the other, but she could not say whether either of these persons had been the passenger/shooter. She then said that she believed the taller of the two still carried a gun as they ran away.

¶20. Arthur Davis, son of Jewel and husband of Clara, was also at the intersection at the time of the shooting but was in a different vehicle than that of his wife and mother. Davis saw a shooter from the passenger side of the Blazer who appeared to be black. He also saw the driver of the Blazer, who was a black male. Davis heard two quick bursts of gunfire, then a pause, then three to four shots. Davis saw one person running from the Blazer but didn't know whether it was the passenger or the driver. Davis never saw any shots come from anywhere but the passenger side of the Blazer.

¶21. Mamie Hardges was in the car directly behind the stolen Blazer when the shooting began at the intersection. Immediately before the shooting she saw a short, light-complected black male get out of another car and get in the passenger side of the Blazer. Once the shooting started she saw a black male get out of the driver's door of the Blazer. She stated that he was shooting at Eddie Wilson as he was getting out of the door. She said that the driver of the Blazer was the taller of the two. She then saw the driver of the Blazer, still with the gun in his hand, run away. She thought that the tall male was wearing a plaid shirt, but she wasn't sure. Later she stated that she probably didn't see the driver firing at Wilson.

¶22. Jackson Police Officer Todd King arrived at the intersection shortly after the shooting. He then searched the area for the suspects, and eventually saw two black males running from the scene, but they were too far away for him to catch. King stated that one suspect was noticeably taller than the other, and was wearing black pants and a black shirt. The shorter suspect was wearing a brown plaid shirt and light-colored jeans.

¶23. Curtis Rhone accompanied Jason Phalo and Moses Dabney as they rode around Jackson the day of the shooting. Rhone was in the car behind the Blazer at the intersection of Northside and North State when Eddie Wilson tried to block the Blazer. Rhone stated that Wilson came to the driver's side door of the Blazer, trying to open the door; that Jason Phalo started to kick the door from the inside; that a shot was fired, and Wilson tried to run away; that Jason Phalo got out of the truck and began to run; and that Moses Dabney began to shoot from the passenger side. After that both Dabney and Phalo ran away.

¶24. Phalo argues that he was entitled to Instruction D-3 under the definition of manslaughter provided in Miss. Code Ann. § 97-3-27 (1994):

The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, except rape, burglary, arson, or robbery, or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter.

¶25. Phalo argues that most if not all the evidence points to Moses Dabney as the shooter. We find that under these circumstances Phalo was entitled to a manslaughter instruction. The instruction as proposed by Phalo did not contain the element "without malice." This is a critical element of the law as provided in § 97-3-27. This Court stated in *Manuel v. State*, 667 So.2d 590, 593 (Miss. 1995):

In homicide cases, the trial court should instruct the jury about a defendant's theories of defense, justification, or excuse that are supported by the evidence, no matter how meager or unlikely, and the trial court's failure to do so is error requiring reversal of a judgment of conviction. *Hester*, 602 So.2d at 872. Where the instructions are in improper form and are the only ones embodying a legally correct theory of the defendant's defense, it is the duty of the trial court to see that the instructions are placed in proper form for submission to the jury. *Id.* at 873.

The failure to submit Instruction D-3, in corrected form, amounts to reversible error.

¶26. Phalo makes the same argument concerning the denial of Instruction D-4, concerning the offense of accessory after the fact, which states:

If you are convinced from the evidence beyond a reasonable doubt that: 1) Jason Phalo did, on December 31, 1993 and/or thereafter, in Hinds County, Mississippi; 2) Conceal, receive, relieve, aid or assist Moses Dabney in escaping or avoiding arrest, trial, conviction or punishment; 3) At a time when Jason Phalo knew that Moses Dabney had committed a felony; then you may find Jason Phalo guilty of Accessory After the Fact of a Felony.

¶27. Phalo cites *Gangl v. State*, 539 So.2d 132 (Miss. 1989), where this Court found that the circuit court had erred in not granting an accessory after the fact instruction where the principal charge was robbery. Gangl did not participate in the robbery itself but drove the alleged getaway car. The question was whether Gangl was an accessory before or after the fact. This Court in *Gangl* stated that the standard for granting a lesser offense instruction was the same as that of granting a lesser included offense instruction.

¶28. In this case the evidence shows that Phalo and Dabney both ran back to Phalo's house after the shooting. During this time Dabney threw one of the guns away. Dabney changed clothes at Phalo's house. Phalo drove Dabney home. On January 5 Phalo gave police a statement and led them to one of the pistols, the .380. Marcus Nelson, a friend of Dabney's, stated that he, at Dabney's request, moved the .38 from one hidden location to another. Nelson eventually gave the gun to a friend, but also called police, and it was recovered. We find that the evidence is insufficient to support Instruction D-4.

## CONCLUSION

¶29. The circuit court erred when it excluded at trial evidence of Moses Dabney's mental condition as

it possibly pertained to the credibility of his statements to the police. Further, the circuit court erred when it refused to grant a manslaughter instruction for Jason Phalo. Dabney's and Phalo's convictions and sentences are reversed and remanded to the circuit court.

¶30. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE AND MILLS, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY ROBERTS, J. WALLER, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, DISSENTING:**

¶31. This case concerns the unfortunate, unnecessary and cold blooded shooting death of Eddie Wilson, Jr., the son of a City of Jackson police officer. The killing was committed by Jason Phalo and Moses Dabney, III, during the course of their theft of Wilson's Chevrolet Blazer from his place of employment at Electric City. The majority concludes that the lower court erred in excluding trial evidence concerning Moses Dabney's mental status as it pertained to the credibility of his statements to the police. The majority has further held that the circuit judge erred in refusing to grant a manslaughter instruction for Jason Phalo.

¶32. In my view, the Court of Appeals' decision in upholding the trial court was correct. I respectfully dissent.

¶33. Consider first the question of Dabney's statement. Prior to trial, at a suppression hearing, Dabney, citing borderline mental retardation, challenged the voluntariness of two statements given to police. The trial judge held both statements were voluntary and admissible, but neither statement was introduced at trial by the State. While in custody at the jail, Dabney acknowledged that a shirt given to Officer Clidell Colston by Phalo's mother, was in fact his (Dabney's) shirt and that he had been wearing the shirt at the time of the shooting. The State did not introduce this third statement either, but rather, it was introduced by Phalo over Dabney's objection.

¶34. Dabney claims that because of his low mental ability and the fact that he was a special education student, his statement should be rendered involuntary and inadmissable. The majority, citing *Cole v. State*, 525 So. 2d 365, 368 (Miss. 1987), writes that Dabney was restricted by the trial judge from introducing at trial the evidence that he had introduced at the pre-trial hearing regarding his mental capabilities. *Cole* adheres to the premise that "Once a confession has been admitted, 'either party has a right to introduce before the jury the same evidence which was submitted [at the suppression hearing] as well as any other evidence relative to the weight and credibility of the confession." *Id.* (quoting *Rhone v. State*, 254 So. 2d 750, 754 (Miss. 1971)). This Court, in *Cole*, found this argument to be without merit because the issue of voluntariness was presented to the jury during questioning by the defense attorney. *Cole*, 525 So. 2d at 368.

¶35. In my view, *Cole* is similar to the case at bar. Questions regarding Dabney's age, whether his parents were present, whether his lawyer was present and whether the officer knew that Dabney was a special education student were all asked of Officer Colston during cross-examination by defense

counsel. While the quote from *Cole* is indeed a correct statement of the law, it is not on point in the case at bar. Dabney's confession was not introduced. Only the plaid shirt was introduced. Neither of Dabney's other two statements were admitted at trial either. Admission of the shirt into evidence does not amount to a confession by Dabney. Only the first two Dabney statements were the subject matter of the pre-trial suppression hearing. Defense counsel never presented the third statement at the suppression hearing pre-trial. Defense counsel waited until cross-examination to raise this issue for the first time. Thus, the shirt's introduction could not open the door to allow all of the supposed evidence Dabney wanted to introduce regarding his mental status.

¶36. Actually, the issue of evidence of Dabney's retardation was irrelevant. Even if Dabney's statement could be construed as a confession, Dabney clearly knowingly and intelligently waived his rights before making the statement to the police. Dabney claims the jury was prevented from hearing evidence of his low intelligence and that he would just agree to anything that he was told to do.

¶37. However, examination of the record on this very issue shows otherwise. When this issue first arose, defense counsel announced an agreed stipulation concerning the shirt. However, after consultation with Dabney, defense counsel promptly withdrew the stipulation. Defense counsel announced to the trial judge, "He [Dabney] won't agree to this." All this occurred in the presence of the trial judge who readily observed the situation in its entirety. This incident and others observed by the trial judge during trial is supportive of the trial judge's finding that Dabney understood what he was doing, that his low intelligence level was not of such magnitude that he was severely handicapped, and that he voluntarily waived his rights regarding any statements.

¶38. Regardless, Dabney was allowed to have his two teachers testify. They both advised the jury that they were special education teachers who had taught Dabney. Considering the entirety of the record on this issue, the jury heard ample testimony and could have reasonably concluded that Dabney had a learning disability. The complete issue of Dabney's mild retardation and low intelligence was presented to the jury regarding the voluntariness of the statement about the shirt. The jury obviously rejected Dabney's claims.

¶39. More importantly, considering that it was the shirt that Dabney was trying to suppress at trial during cross-examination of a State's witness, evidence that the shirt belonged to Dabney could not have played such a substantial role that it's introduction affected the outcome of the case. See *Stokes v. State*, 548 So. 2d 118 (Miss. 1989); *Holland v. State,* 587 So. 2d 848 (Miss. 1991); *McFee v. State*, 511 So. 2d 130 (Miss. 1987). Here, Dabney was positively identified by Curtis Rhone as the person who shot Wilson when he attempted to regain possession of his stolen vehicle. His presence at the scene of the murder is thus uncontested. The identification of the shirt in view of this eye witness identification is of little value by comparison purposes and of no practical or legal consequence. Even if the introduction could be considered error, which it is not, error, if any, is harmless beyond a reasonable doubt.

¶40. Next, we consider the majority's claim of error by the trial court in failing to grant a manslaughter instruction to Jason Phalo. The Court of Appeals found that the trial court was correct, that there was no evidence to warrant the giving of a manslaughter instruction. What are the facts in this record to warrant the reversal of this case for failure to give a manslaughter instruction? Plain and simple, there are no facts that support the giving of a manslaughter instruction. Here, the facts

overwhelmingly support only that a cold blooded murder was committed by Phalo and Dabney. Eddie Wilson, unarmed at the time, was simply attempting to get back his stolen Blazer from Phalo and Dabney.

¶41. Curtis Rhone, who had been riding around with the group, was in a vehicle immediately behind the Blazer. He testified that there was a.38 caliber gun, the same as the murder weapon, at Phalo's house immediately after the killing. Rhone also was asked, "Curtis, does Jason Phalo have a gun?" to which Rhone responded, "Yes." Rhone was then asked, "Is it a revolver or a semi-automatic?" Rhone responded, "Semi-automatic." Rhone also stated that he saw Wilson run up to the Blazer and try to get Phalo out. Phalo kicked out at the door. He heard one gunshot, and Wilson ducked and ran. Rhone saw Dabney fire several shots at Wilson. There was evidence presented that two guns were in the vehicle and one of them belonged to Wilson.

¶42. Mamie Hardges, an eyewitness who was in the car immediately behind the stolen Blazer and only five feet away from Phalo, testified that Phalo got out of the drivers' side of the stolen Blazer with a gun in his hand. She stated that he fired a shot before he got out and that he ran from the scene with a gun in his hand. Hardges also managed to positively identify Phalo from a photo lineup. There was also testimony presented to the jury that Phalo, not Dabney, led police to one of the weapons which was recovered.

¶43. Jewel Davis, Clara Davis and Arthur Davis, all eyewitnesses to the killing, said they saw Dabney firing at Wilson. They all said the taller of the two men, which was Phalo, had a gun in his hand when he was running from the scene. Clara Davis said that the person she saw running away was wearing a plaid shirt. Dabney was wearing the plaid shirt on the day of the killing, the same shirt that was turned over to Jackson police by Phalo's mother. The evidence before the jury was thus overwhelming that both Phalo and Dabney had guns at the scene and that both fired at Wilson.

¶44. Here, there is simply no evidentiary basis for the granting of a manslaughter instruction. *Ormond v. State*, 599 So. 2d 951, 960 (Miss. 1992); *Mease v. State*, 539 So. 2d 1324, 1330 (Miss. 1989); *Harbin v. State*, 478 So. 2d 796 (Miss. 1985). "[A] lesser included offense instruction is required 'where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt." *Thorson v. State*, 653 So. 2d 876, 893 (Miss. 1994) (*quoting Mackbee v. State*, 575 So. 2d 16, 23 (Miss. 1990)). This Court has also held that where a defendant has requested a lesser charge, this Court will look at the evidence in the light most favorable to the defendant in determining whether such an instruction is warranted. *Davis v. State*, 684 So. 2d 643, 656 (Miss. 1996). Phalo's defense was that he simply was not the one who shot at Wilson. Nor was there any evidence that Phalo only aided or assisted Dabney in escaping from the scene of the killing, as suggested by Phalo in another alleged error raised on appeal. He offered no suggestion of accidental shooting. Here, considering the evidence in a light most favorable to Phalo, there is a total absence within this record of an evidentiary basis for giving a manslaughter instruction. *Id.* at 657. To the contrary, all the evidence suggests that the only possible instruction that the learned trial judge could have given was for murder.

¶45. My conclusion is that although this was not a perfect trial, Phalo and Dabney in fact did receive a fair trial. The glaring aspect of this case that stands out above all else is the senseless shooting of a young man, killed in the prime of his life during the all too common theft of a vehicle on the streets of

Jackson. These two defendants could have fled themselves. Instead, Phalo and Dabney, when cut off, deliberately made the free will choice to kill in cold blood Wilson, who was unarmed and at the time had turned to flee for his life. The trial judge did not err and the Court of Appeals should be affirmed.

¶46. I respectfully dissent.

**ROBERTS, J., JOINS THIS OPINION IN PART.**