# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-DR-00589-SCT

*KENNEDY BREWER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/1995 |
| TRIAL JUDGE | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CARRIE A. JOURDAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION RELIEF |
| DISPOSITION: | REMANDED |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/27/2002 |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

## FACTS

¶1. Kennedy Brewer ("Brewer") petitions this Court for relief under the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 to -29 (2000 & Supp. 2001). Brewer's petition arises from Brewer's capital murder conviction and sentence of death in the Circuit Court of Lowndes County, Mississippi, after venue was transferred from Noxubee County. Brewer was found guilty by a jury on March 24, 1995, for the rape and murder of Christine Jackson, three (3) years of age, who was the daughter of Brewer's live-in-girlfriend, Gloria Jackson. On direct appeal to this Court, Brewer raised several issues, including: (1) constitutional right to a speedy trial, (2) statutory right to a speedy trial, (3) discovery violation--alleged failure to disclose anticipated opinion of expert witness, (4) *Batson* violation, (5) propriety of rejecting an accomplice instruction, (6) comment on Brewer's failure to testify, (7) qualification of the State's expert forensic odontologist, (8) *sua sponte* exclusion of videotape showing expert forensic odontologist performing direct comparison test of teeth and bite-mark wounds, (9) failure to

suppress evidence obtained from allegedly illegal arrest, (10) improper comments during closing argument, (11) insufficiency of the evidence, and (12) necessity of reversal based on aggregate error. Brewer's direct appeal to this Court following his conviction was affirmed on July 23, 1998, and this Court denied his motion for rehearing on October 22, 1998. *Brewer v. State*, 725 So.2d 106 (Miss.1998).

¶2. On March 22, 1999, Brewer's petition for writ of certiorari was denied by the United States Supreme Court. *Brewer v. Mississippi*, 526 U.S. 1027, 119 S.Ct. 1270, 143 L.Ed.2d 365 (1999). On March 24, 1999, the State filed a motion to reset the execution for Brewer. On April 1, 1999, direct appellate counsel for Brewer filed a response asking that the State's motion be held in abeyance to allow Brewer to request appointment of counsel to file a post-conviction petition. On April 5, 1999, Brewer filed a "pro se" motion to appoint counsel along with a "pro se" petition for post-conviction relief.

¶3. On April 20, 1999, this Court dismissed the State's motion to reset the execution date and, by separate order, remanded the case to the trial court for appointment of counsel. After appointment of Carrie A. Jourdan as counsel, Brewer filed a petition for post-conviction relief with this Court on September 21, 1999, which was based solely upon the contention that the State and trial court failed to respond properly to the possibility of exculpatory DNA evidence. At trial, a forensic scientist for the Mississippi Crime Lab testified that it was her opinion that there was insufficient DNA for testing. However, Brewer alleged that prior to the completion of trial, Defendant's counsel learned that technology had advanced sufficiently to allow the testing of minute specimens but that the trial court did not allow such testing. This Court denied relief on Brewer's petition on March 23, 2000. *Brewer v. State*, No. 1999-DR-00589-SCT, 2000 WL 298715, ¶ 14 (Miss. March 23, 2000). However, in denying relief, this Court acknowledged that Brewer should have access to DNA materials which he claims, if tested, would demonstrate his innocence. To that end, the Court noted in footnote 1 of the opinion that "our decision today is without prejudice to Brewer's ability to present a claim within a reasonable time based upon actual DNA results which are exculpatory." *Id.* at ¶ 20 n.1.

¶4. On April 7, 2000, Brewer filed a petition for rehearing claiming that without some remand and direction to the trial court, he had no procedural vehicle for acquiring financial assistance to have the DNA material tested. The Court agreed and, for that reason, entered an order on December 21, 2000, staying the proceedings in this Court and remanding this matter to the trial court for such proceedings as necessary to allow Brewer access to the DNA evidence in this case and funds for the testing of same.

¶5. Brewer then filed a post-trial motion with the trial court to test the DNA evidence at the State's expense, which was granted on April 3, 2001. On August 13, 2001, Brewer filed another "Petition for Relief Under the Mississippi Uniform Post-Conviction Collateral Relief Act" with this Court, which is the subject of the current proceedings. Also on August 13, 2001, Brewer filed his "Motion for Expedited Review of Petition for Post-Conviction Relief" with this Court. Even though Brewer has filed another petition, this pleading will effectively operate as a request to lift the stay entered in response to Brewer's petition for rehearing, which is still pending only as to the issue of the DNA test results.

¶6. Brewer is seeking a new trial based upon newly discovered evidence in the form of exculpatory DNA test results as well as evidence challenging the reliability of the method used to determine that the bite marks inflicted upon the victim matched Brewer's teeth. Brewer also claims the need for a new trial based on the alleged failure of the State to disclose exculpatory evidence. Alternatively, Brewer asks this Court to vacate his conviction and prevent a retrial.

¶7. Brewer alleges that this newly discovered evidence will probably produce a different result or verdict and that it could not have been discovered before trial by the exercise of due diligence. Specifically, Brewer alleges that the DNA test results exclude him as the donor of the semen sample removed from the victim. In addition, Brewer alleges that his clothes were negative for any DNA from the victim. Brewer argues that if a jury were presented with these DNA test results, it would probably return a different verdict.

¶8. Furthermore, Brewer alleges that the newly discovered evidence challenging the reliability of bite-mark identification further bolsters his argument for a new trial.

¶9. In addition, Brewer claims that this Court should vacate his conviction because the State failed to disclose exculpatory evidence.

## DISCUSSION

¶10. Prisoners may file an action to vacate or set aside a judgment on the ground "[t]hat there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." Miss. Code Ann. § 99-39-5(e). This Court has previously held that:

> Newly discovered evidence warrants a new trial if the evidence will probably produce a different result or verdict; further, the proponent must show that the evidence "has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching."

*Ormond v. State*, 599 So. 2d 951, 962 (Miss. 1992) (quoting *Smith v. State*, 492 So.2d 260, 263 (Miss.1986)).

### A. DNA Evidence

¶11. Brewer alleges that he has newly discovered evidence that meets the standard recited above. This new evidence is in the form of exculpatory DNA test results as well as evidence challenging the reliability of the method used to determine that the bite marks inflicted upon the victim matched Brewer's teeth. This Court previously entered an order on December 21, 2000, staying the proceedings in this Court and remanding this matter to the trial court for such proceedings as necessary to allow Brewer access to the DNA evidence in this case and funds for the testing of same. Brewer is now before this Court claiming that the results of the tests performed on that DNA evidence exculpate him and that this Court should order a new trial, or alternatively, vacate his conviction and prevent the State from retrying this matter.

¶12. The State argues that this Court does not have jurisdiction over the claim relating to the results of the DNA tests because the order entered on December 21, 2000, appears to vest jurisdiction in the trial court. The State points out that the order calls for DNA testing and "such further proceedings as may be necessary in connection therewith or in response to the results of such testing." The State argues that this language vests jurisdiction in the trial court to make the initial determination of what effect the results of the DNA testing will have on Brewer's conviction and sentence. As a result, the State asks that this portion of Brewer's petition either be dismissed without prejudice or held in abeyance as being brought prematurely and hold that Brewer's remedy will be by appeal of any decision made by the trial court after a hearing in this matter.

¶13. The State indeed makes a valid point in that it appears that the intention of this Court was that the trial

court would hold further proceedings, such as an evidentiary hearing, in response to the DNA test results without the need for further petitioning this Court. Nevertheless, Brewer has petitioned this Court for either a new trial or vacation of his conviction without the possibility of further prosecution.

¶14. Addressing the merits of Brewer's petition, the question is whether the newly discovered evidence is of such a nature that it "will probably produce a different result or verdict . . . ." ***Ormond***, 599 So. 2d at 962. Clearly, this standard requires the appellate court to effectively weigh the newly discovered evidence. Indeed, Brewer's newly discovered DNA evidence does appear quite compelling. However, there still appears to be sufficient evidence in the record, circumstantial and otherwise, indicating Brewer's involvement.[1]

¶15. Nevertheless, this Court has previously recognized that death penalty cases require a higher level of scrutiny because of the irreversible nature of the penalty. *See, e.g.*, ***Griffin v. State***, 557 So. 2d 542, 552 (Miss.1990) ("In capital murder cases this Court has applied a heightened standard of review . . . ."). It is because of this heightened standard of review that the Court should remand this matter to the trial court for an evidentiary hearing to determine if the newly discovered DNA evidence is sufficient to warrant a new trial. While there may appear to be sufficient evidence to convict Brewer notwithstanding this new DNA evidence, the fact that this is a death penalty case justifies the need to revisit this matter in light of these test results.

¶16. However, while Brewer's allegations certainly raise some question as to his conviction, it would seem prudent to proceed at the trial court level with an evidentiary hearing to further develop the nature of this newly discovered evidence as opposed to granting a new trial based solely on the briefing at the appellate court level. Therefore, this matter should be remanded to the trial court so that Brewer may be granted an evidentiary hearing regarding the exculpatory DNA evidence as was originally intended by the December 21, 2000, Order staying the proceedings in this Court and remanding this matter to the trial court as to the DNA evidence. The trial judge is to make a determination as to whether or not the newly discovered evidence is sufficient so that if a reasonable fact finder knew said information then that reasonable fact finder may have reached a result different from the previous result reached.

¶17. Brewer also asks this Court to reverse his conviction, render him not guilty, and prevent the State from retrying him. Brewer alleges that there remains insufficient evidence to sustain the conviction. However, while the DNA evidence may indeed make it appear less likely that Brewer raped the victim, we must not forget that a jury convicted him of murder based on the evidence presented at trial. The DNA evidence does not prove conclusively that Brewer did not murder the victim.

### B. Discovery Violations

¶18. Brewer claims that he was denied due process by the State's failure to produce exculpatory evidence in violation of Rule 9.04 of the Uniform Circuit and County Court Rules. Brewer alleges that the State was aware of damaging information about another suspect that was provided to the Sheriff's Department of Noxubee County by the victim's mother. Specifically, Brewer claims that:

> Upon learning that the DNA sample taken from the victim contained semen from, at least, two unknown male donors, undersigned counsel had an investigator further investigate DeWayne Graham and Leshone Williams, the above mentioned male suspects that had been excluded by the testimony of Dr. West. . . . Defense counsel's investigator, Hubert Chandler, a former police officer and veteran

investigator of numerous criminal trials, learned upon interviewing Gloria Jackson, the mother of the victim, that she had been warned by Ethel Graham, the mother of Dwayne Graham, that he had what could only be characterized as pedophile tendencies. Gloria Jackson also indicated that she had seen him engage in some suspicious behavior around the minor children and that she had heard that he had to seek medical treatment for abrasions on his penis, shortly after the discovery of little Christine Jackson's battered and bruised body. . . . More importantly, she also indicated that she had advised the Sheriff's Department of Noxubee County of all of these matters which were never disclosed to the defense counsel. Clearly, the state was obligated to furnish this obviously exculpatory information to defense counsel at trial.

¶19. The State responds that Brewer is attempting to raise a totally new claim, which was not presented in his original post-conviction motion and that this case is still open on only one issue--the DNA test results. Furthermore, the State argues that this case is pending on a motion for rehearing, and this Court has held for years that one cannot raise new claims in a motion for rehearing. *See Irving v. State*, 441 So. 2d 846, 854 (Miss. 1983) ("The issue may not now be raised for the first time on a petition for rehearing and it is procedurally barred."), (citing *Edwards v. Thigpen*, 433 So. 2d 906 (Miss. 1983); *Wheat v. Thigpen*, 431 So. 2d 486 (Miss. 1983)). As a result, the State asserts that this claim should be dismissed with prejudice.

¶20. In addition, the State asserts that even if the alleged discovery violation were properly before the Court, Brewer has failed to meet the requirements of Miss. Code Ann. § 99-39-9. Specifically, the State points out that Brewer has failed to file a separate statement of specific facts which are within his personal knowledge under oath as required by Miss. Code Ann. § 99-39-9(1)(d). Furthermore, the State references the fact that Brewer has failed to attach affidavits of the witnesses he intends to use to support his claim as required by Miss. Code Ann. § 99-39-9(1)(e). The State further asserts that the unsworn statement of the victim's mother is clearly hearsay. Therefore, the State submits that Brewer's claim as to this issue is subject to summary judgment under *Neal v. State*, 525 So. 2d 1279, 1280-81 & n.2 (Miss. 1987). *See also* Miss. Code Ann. § 99-39-19.

¶21. Although this Court has previously held that one cannot raise a new claim on a motion for rehearing, in this instance, the evidence in support of this new claim is the DNA test results which were not previously available. It was the newly discovered DNA test results that led to further investigation by Brewer's defense counsel, revealing the allegation that information about other suspects was provided to the Sheriff's Department by the victim's mother. Hence, in this instance, and under these circumstances, the Court determines that it is appropriate to allow this claim to be raised at this time. Without addressing whether or not the State should have produced the exculpatory evidence (i.e., the alleged statement to the Sheriff's deputies), clearly now, in light of the DNA test results, any evidence the State may have, which may be exculpatory, including the alleged statement, should be produced forthwith.

¶22. With regard to the State's argument that Brewer failed to comply with the requirements of § 99-39-9, the Court points out that this is a unique situation and the statute is inapplicable in this instance because the evidence in support in this claim did not arise until after the trial and until after the matter appeared in the Supreme Court. Furthermore, Brewer did obtain and attach with his motion a statement, albeit unsworn, from the victim's mother. Therefore, we conclude that under these circumstances, the evidence offered in support of this motion is enough to warrant production by the State of any exculpatory material. Justice requires this result.

## C. Bite-Mark Identification

¶23. In addition, Brewer challenges the reliability of the bite-mark evidence presented against him as well as the credibility of the expert witness, Dr. Michael West, who presented it. In support of this claim, Brewer presents the affidavit of Charles Michael Bowers, D.D.S., along with the draft of an unpublished article outlining the shortcomings of bite-mark evidence and the error rate as determined by the American Board of Forensic Odontology. He urges that this Court should not tolerate a science that, as Brewer claims, is more likely than not to identify the wrong suspect.

¶24. The State responds that, again, Brewer is attempting to raise a new claim on motion for rehearing. The State further asserts that even if this claim could be properly presented to this Court on a motion for rehearing he is further procedurally barred from doing so. As the State points out, this claim was fully litigated at trial, reviewed on direct appeal, and is, therefore, barred from reconsideration by Miss. Code Ann. § 99-39-21(3).

¶25. This Court has previously held that bite-mark evidence is admissible in Mississippi. ***Brooks v. State***, 748 So. 2d 736, 739 (Miss. 1999) ("We now take the opportunity to state affirmatively that bite-mark identification evidence is admissible in Mississippi."). Even if this Court were compelled by Brewer's argument, it would seem highly inappropriate to overrule well-established precedent based solely on an affidavit and a draft of an unpublished article.

¶26. Moreover, in Brewer's direct appeal, this Court previously held that "[t]he record evidence shows that Dr. West possessed the knowledge, skill, experience, training and education necessary to qualify as an expert in forensic odontology." ***Brewer v. State***, 725 So.2d at 126. At that time, this Court held that Brewer's challenges to Dr. West's testimony "went to weight and credibility to be assigned his testimony by the jury--not his qualifications." ***Id.*** Brewer's current arguments are simply another attempt to attack Dr. West's qualifications. Just as before, these new challenges should go to weight and credibility to be assigned by the jury. Furthermore, Brewer's attempt to raise this issue again is procedurally barred pursuant to Miss. Code Ann. § 99-39-21(3).

¶27. Nevertheless, if the trial court determines that a new trial is warranted as a result of the newly discovered DNA evidence, then Brewer is free to put forth such evidence as the trial court deems admissible at that time in order to discount the reliability of bite-mark evidence and the credibility of Dr. Michael West.

## CONCLUSION

¶28. Because of the compelling nature of the newly discovered DNA evidence, Brewer should be afforded an evidentiary hearing related to this newly discovered evidence in order to determine if a new trial is warranted. However, without the benefit of the evidentiary hearing ordered herein, this newly discovered exculpatory evidence does not appear compelling enough, when considered along side the evidence presented at trial, to justify vacation of Brewer's conviction by this Court. While Brewer's petition requests this Court grant him a new trial on the merits, or in the alternative to vacate his conviction and prevent a retrial, the appropriate remedy is to remand this matter to the trial court so that an evidentiary hearing may be held. Miss. Code Ann. § 99-39-27(7)(b) specifically allows this Court the authority to "[a]llow the filing of the motion in the trial court for further proceedings under Sections 99-39-13 through 99-39-23." Furthermore, the December 21, 2000, order issued by this Court contemplates that the trial court hold just

such an evidentiary hearing should the DNA tests produce any noteworthy results. Any evidence the State may have, which may be exculpatory, including the alleged statement by the victim's mother, should be produced forthwith. Brewer's claim regarding the reliability of bite-mark identification is hereby denied. Therefore, this case is remanded to the circuit court for further proceedings consistent with this opinion.

¶29. **REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ AND CARLSON, JJ., CONCUR. EASLEY, J., NOT PARTICIPATING**.

1. Brewer was with the children the entire time the mother was gone. Other than the three-year old victim, there were two younger children who were twenty-two months old and thirteen months old. Brewer is the father of these two younger children but is not the father of the victim. Only the three-year old was raped and murdered. When the victim's mother returned and asked Brewer about the victim's whereabouts, Brewer picked up a form wrapped in a blanket (which the mother assumed to be the child about whom she had inquired) and laid the form on a pallet on the floor in the same room in which Brewer and the mother slept. The mother admitted that she was somewhat intoxicated at the time and that she was not really paying attention. In addition, she trusted Brewer with her children and did not feel the need to check on them. The next morning the victim was no where to be found. Brewer told the mother that he did not know the child's whereabouts. There was no evidence of forced entry into the house.

In addition, a deputy sheriff obtained Brewer's clothes and gave them to a dog handler. A dog team, tracking Brewer's scent, led the dog handler to the edge of a creek behind the house where the victim lived. The child's body was subsequently found near this location.

Moreover, Dr. Michael West, the State's expert forensic odontologist, testified that it was his opinion that the bite marks on the victim were inflicted by Brewer.