MAXWELL, J,
 

 for the Court:
 

 ¶ 1. A jury in the Madison County Circuit Court found Percy Bridgeman guilty on two counts of statutory rape. On appeal, Bridgeman claims the circuit court improperly admitted the eight-year-old victim’s out-of-court statements. He also argues the post-trial discovery of a government witness’s prior embezzlement conviction requires a new trial.
 

 ¶ 2. We find the child’s out-of-court statements fall within Mississippi Rule of Evidence 803(25) — the tender-years hearsay exception. We also conclude the newly discovered embezzlement conviction is merely impeachment evidence and does not warrant a new trial. We likewise reject Bridgeman’s remaining assignments of error and affirm.
 

 FACTS
 

 ¶ 3. From 2005 to 2006, L.H.
 
 [1]
 
 was a student at Canton Elementary School. She lived with her mother and her two younger half-siblings. At the time, L.H.’s mother dated Bridgeman, who was the
 
 *1211
 
 natural father of L.H.’s two siblings but not L.H. In April 2006, a Madison County grand jury charged Bridgeman with the statutory rape of L.H.
 

 I. L.H.
 
 ⅛
 
 testimony
 

 ¶ 4. L.H. explained that Bridgeman “touched her in the wrong place.” The first encounter occurred when she was in her bedroom at her grandparents’ house. Bridgeman made her take off her clothes, then took off his own. He touched her “private part” first with his finger and then with his “private part.” L.H. testified that his “private part” went “inside” her “private part.” She recalled that this incident occurred soon before her eighth birthday in April 2005.
 

 ¶ 5. She claimed that an almost identical incident of sexual penetration took place later in a motel room. L.H. remembered this second encounter happened in January 2006 because it was near the time when her mother died. She claimed Bridgeman sexually assaulted her on other occasions as well. According to L.H., no one else had improperly touched her. L.H. was eleven years old when she testified at Bridgeman’s trial.
 

 II. L.H.
 
 ⅛
 
 Owt-of-Court Statements
 

 ¶ 6. Prior to trial, the circuit court held a hearing on the admissibility of L.H.’s statements to (1) Benae Jackson, an employee of the Madison County Department of Human Services (DHS); (2) Rhonda Poe, the Canton Elementary principal; and (3) Lieutenant Shelby Burnside, an investigator with the Canton Police Department. After hearing testimony from these three witnesses, the circuit court admitted their recitations of L.H.’s prior statements under the tender-years exception to the hearsay rule.
 
 See
 
 M.R.E. 803(25).
 

 ¶ 7. Jackson testified that during late January 2006, the Madison County Department of Human Services received an anonymous phone call from a concerned parent. The parent’s child was in L.H.’s class and had heard stories leading the parent to suspect sexual abuse. Jackson met with L.H. and asked her “if she knew the difference between good and bad touches.” L.H. responded that she did, and Jackson then asked “if she had experienced bad ... touches.” Jackson did not indicate whether L.H. responded, but she did maintain that L.H. was “reluctant” to answer. Jackson provided L.H. with a school contact if she wished to speak further about being “touched in a bad way.”
 

 ¶ 8. Soon after, the school principal, Poe, met privately with L.H. in her office. The meeting occurred shortly after L.H.’s teacher raised suspicions that L.H. may have been a victim of sexual abuse. According to Poe, L.H. told her that Bridgeman had been “touching her inappropriately and doing things that were inappropriate.” L.H. explained that on weekends her family often stayed in motel rooms, where Bridgeman touched her. L.H. did not specifically describe the touching, and Poe did not attempt to elicit additional details. After meeting with L.H., Poe contacted DHS.
 

 ¶ 9. Jackson returned to the school for a second interview with L.H., who repeated her account of inappropriate touchings but provided no further details. Jackson later interviewed L.H. while Lieutenant Burnside observed from a separate room. This time L.H. identified two occasions when she had been sexually assaulted. The first incident occurred in her bedroom at her grandparents’ house. The most recent encounter happened in a motel room, when she and Bridgeman were alone. L.H. explained that Bridgeman had gotten on top of her and that penetration had occurred.
 
 *1212
 
 She claimed similar sexual assaults had taken place in motel rooms on other occasions between these two incidents.
 

 ¶ 10. Like Jackson, Lieutenant Burnside recounted L.H.’s description of being penetrated in her “private part.” He also testified that L.H. identified specific locations and time periods. The first sexual assault occurred at her grandparents’ house. L.H. claimed the same thing happened more than five other times, with the most recent assault occurring in a motel room when L.H.’s mother had taken the other two children to a doctor’s appointment.
 

 ¶ 11. Dr. Janice Bacon examined L.H. after a referral from DHS. She also spoke directly with L.H. about her encounters with Bridgeman. Dr. Bacon testified that L.H. indicated Bridgeman “did bad touches” and that Bridgeman “stuck his finger in her vaginal area[.]” L.H. explained these events took place at her grandparents’ house and in motel rooms.
 

 III. Medical Evidence
 

 ¶ 12. Dr. Bacon testified as an expert in pediatrics. Based on results of vaginal and rectal examinations and her conversations with L.H., Dr. Bacon concluded L.H. had been sexually abused. She reached this opinion though it appeared to her that L.H.’s hymen was still intact.
 

 ¶ 13. Test results revealed L.H. had contracted chlamydia, which Dr. Bacon described as “primarily” a sexually transmitted disease. She explained a newborn child could possibly contract the disease from passing through an infected mother’s birth canal. But Dr. Bacon, who had been L.H.’s pediatrician since birth, believed that if L.H. had contracted the disease at birth, she would have manifested noticeable symptoms at a younger age. In Dr. Bacon’s opinion, L.H. received the disease through “sexual transmission.”
 

 ¶ 14. Dr. Robert Foose, who had treated Bridgeman, testified that in December 2005, Bridgeman complained of testicular swelling and pain and a urethral discharge. Dr. Foose believed the most likely diagnosis was chlamydia. Dr. Foose also observed from Bridgeman’s medical records that Bridgeman had admitted having a sexually transmitted disease in the past. Dr. Foose did not identify the particular disease.
 

 IV. Bridgeman’s Testimony
 

 ¶ 15. Bridgeman testified in his own defense. He denied raping or inappropriately touching L.H. and denied he had ever been diagnosed with chlamydia.
 

 PROCEDURAL HISTORY
 

 ¶ 16. The jury found Bridgeman guilty on both counts of statutory rape. The court sentenced him to twenty-five years on each count, with the sentences to run concurrently. Bridgeman filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The circuit court denied the motion. On appeal Bridgeman claims: (1) the circuit court erred in admitting hearsay evidence under the tender-years exception; (2) the court erred by not granting a new trial due to newly discovered evidence; and (3) the verdict is not supported by sufficient evidence or is against the overwhelming weight of the evidence.
 

 DISCUSSION
 

 I. L.H.
 
 ⅛
 
 Statements
 

 ¶ 17. Bridgeman argues the circuit court erred in admitting L.H.’s statements to Poe, Jackson, Lieutenant Burnside, and Dr. Bacon. In reviewing his claim, we note that because L.H. testified at trial and was subject to full cross-examination,
 
 *1213
 
 the Confrontation Clause is not implicated.
 
 See Crawford v. Washington,
 
 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004);
 
 see also United States v. Owens,
 
 484 U.S. 554, 560, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (introduction of out-of-court statements, even if unreliable, does not violate the Confrontation Clause where declarant testifies at trial subject to full and effective cross-examination);
 
 Story v. Collins,
 
 920 F.2d 1247, 1255 (5th Cir.1991) (where victim in child-sexual-abuse case testified at trial subject to full cross-examination, Confrontation Clause not violated by testimony of another witness concerning victim’s extrajudicial statements);
 
 Eakes v. State,
 
 665 So.2d 852, 866 (Miss.1995).
 

 ¶ 18. While the Confrontation Clause was not violated, we still must determine whether the questioned testimony offends state hearsay rules.
 
 Crawford,
 
 541 U.S. at 51, 124 S.Ct. 1354. Mississippi Rule of Evidence 801(c) defines hearsay as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The hearsay rule excludes evidence meeting this definition unless it falls within an exception provided by law. M.R.E. 802.
 

 A. The Tender-Years Exception
 

 ¶ 19. After hearing from Poe, Jackson and Lieutenant Burnside, the circuit judge concluded their testimony about L.H.’s statements was admissible under Rule 803(25) — the tender-years hearsay exception. Under Mississippi Rule of Evidence 803(25):
 

 A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
 

 ¶ 20. For purposes of Rule 803(25), we look to “the age of the child at the time the relevant statement was made rather than the age of the child at the time that testimony is given at trial.”
 
 Withers v. State,
 
 907 So.2d 342, 348 (¶ 14) (Miss.2005). “[Tjhere is a rebuttable presumption that a child under the age of twelve is of tender years.”
 
 Id.
 

 ¶21. Since L.H. was eight years old when she made the statements, she qualifies as a child of tender years. As to other considerations under Rule 803(25), L.H.’s statements obviously described sexual contact performed on her by Bridgeman. And because L.H. testified at trial, no inquiry into her availability is necessary. So the remaining question under Rule 803(25) turns on the reliability of L.H.’s statements.
 

 B. Reliability
 

 ¶ 22. The comment to Rule 803(25) cites twelve factors from the United States Supreme Court’s decision in
 
 Idaho v. Wright,
 
 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), courts should consider in assessing reliability.
 
 [2]
 
 These
 
 *1214
 
 factors are not exhaustive, and “no mechanical test is available.”
 
 Grimes v. State,
 
 1 So.3d 951, 955 (¶ 10) (Miss.Ct.App.2009) (quoting
 
 Withers,
 
 907 So.2d at 350 (¶ 23)). In
 
 Wright,
 
 the Supreme Court observed “the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.”
 
 Wright,
 
 497 U.S. at 822, 110 S.Ct.3139. “Corroborating evidence may not be used as an indicia of reliability.” M.R.E. 803(25) cmt.
 

 ¶ 23. Following a Rule 803(25) hearing, conducted at the State’s request, the circuit court found sufficient indicia of reliability and admitted L.H.’s statements made to these three witnesses. The circuit judge did not make specific findings on each factor, but he considered all twelve and found “enough [evidence] there that it’s reliable, it’s consistent, spontaneous, the credibility of the witnesses and it’s the opinion of the Court, very high [sic].”
 

 ¶ 24. Bridgeman attacks the reliability of L.H.’s out-of-court statements by pointing to testimony from Maria Thames, a therapist at the Child Advocacy Center. Bridgeman called Thames in his case-in-chief, and her trial testimony was based largely on her recollections gleaned from her report of her forensic interview of L.H. Bridgeman focuses on Thames’s testimony that L.H. denied being touched inappropriately. Bridgeman argues that because this denial conflicts with L.H.’s alleged statements to Poe, Jackson, and Lieutenant Burnside, L.H.’s disclosures to these three witnesses should have been excluded.
 

 ¶ 25. But Thames’s testimony was not before the circuit court when it considered the admissibility of L.H.’s prior statements. The record shows the circuit judge asked defense counsel twice if he desired to call witnesses or put on evidence at the Rule 803(25) hearing. However, Bridge-man neither countered with Thames, nor made a proffer of her proposed conflicting testimony when responding to the State’s request for a pre-trial ruling on the admissibility of L.H.’s statements. Because Thames’s testimony was not before the court when it admitted L.H.’s prior statements, we assess the reliability aspect of the tender-years exception for abuse of discretion by examining Poe’s, Jackson’s and Lieutenant Burnside’s recitations of L.H.’s statements.
 

 ¶ 26. According to Lieutenant Burnside, L.H. had no difficulty remembering details of the sexual abuse. L.H. was calm through most of the interview but toward the end “broke down and started crying.” At that point, the interview was terminated. Lieutenant Burnside further testified that no “specific techniques” were used to gather the statement from L.H., and he had no reason to believe L.H. falsely accused Bridgeman.
 

 ¶ 27. Jackson emphasized that she followed protocol in conducting her interview, and L.H. had no difficulty remembering the details of what occurred. Jackson explained that L.H.’s statements were “spontaneous” and that L.H. was very fearful, withdrawn, and at times “crying uncontrollably” when she made the disclosures. She was aware of no motive for L.H. to lie.
 

 ¶ 28. According to Poe, L.H. was “hanging her head” and “really shy-like” when she disclosed the abuse. She maintained that no suggestive techniques were
 
 *1215
 
 used in speaking with L.H. As Poe put it, “I just let her tell me.”
 

 ¶ 29. Poe’s, Jackson’s and Lieutenant Burnside’s versions of L.H.’s descriptions of the incidents of abuse identify specific acts Bridgeman performed on L.H. They also point out her grandparents’ house and motel rooms where the assaults occurred. The circuit judge’s finding of reliability is further strengthened by the fact that L.H.’s statements to multiple witnesses remained mostly consistent. There are no indications of suggestive interview techniques, and Jackson’s testimony about L.H.’s disclosures of sexual penetration is corroborated by Lieutenant Burnside, who accompanied Jackson during one of the interviews. And there is no apparent motive for L.H. to fabricate the assaults.
 

 ¶ 80. Bridgeman suggests Thames’s testimony about her interview with L.H. renders unreliable these other recitations of L.H.’s prior statements. But Thames described her interview with L.H. as “inconclusive and incomplete” due to the fact that Thames terminated the interview when L.H. fell asleep. Thames was not even sure whether she had asked L.H. specifically about Bridgeman. And since reliability of L.H.’s prior statements is the crux of our inquiry, we simply cannot disregard that Thames indicated in her report that “strong consideration should be given to [L.H.’s] previous disclosures.”
 

 ¶ 31. Because of the lack of evidence disputing that L.H. was particularly likely to be telling the truth when the contested statements were made, we find no abuse of discretion in the circuit court’s admission of L.H.’s statements to these witnesses.
 

 C. Dr. Bacon’s Testimony
 

 ¶ 32. Bridgeman did not object to Dr. Bacon’s recital of L.H.’s allegations of Bridgeman’s sexual abuse. Though the issue is waived, we note the hearsay exception found in Rule 803(4) applies to statements made in furtherance of medical diagnosis and treatment. The scope of Rule 803(4) encompasses a child’s identification of a molester under the theory that part of the treatment of an abused child includes reasonable efforts to isolate the child from the abuser.
 
 Rowlett v. State,
 
 791 So.2d 319, 321 (¶ 4) (Miss.Ct.App.2001) (citing
 
 Hennington v. State,
 
 702 So.2d 403, 415 (¶ 49) (Miss.1997)). Waiver aside, we find Dr. Bacon’s testimony about L.H.’s disclosure of Bridgeman’s abuse was admissible.
 

 II. Jackson’s Prior Conviction
 

 ¶33. Bridgeman next contends he is entitled to a new trial because of “newly discovered evidence” that a witness for the State had an undisclosed 2001 felony embezzlement conviction. Following trial, Bridgeman’s attorney learned of this impeaching information “by chance” and raised the issue of Jackson’s felony conviction in his post-trial motion.
 

 ¶ 34. Jackson had testified at trial about interviews she conducted with L.H., and the court permitted Jackson to recount L.H.’s statements to her. Bridge-man contends a diligent search would not have revealed Jackson’s embezzlement conviction because the amended judgment of conviction and the court’s sentencing order erroneously listed her last name as “Johnson.” At a post-trial motion hearing, Jackson testified that her last name had never been Johnson, and the mistake must have been a typographical error. The circuit court rejected the newly discovered impeachment evidence as a basis for granting a new trial.
 

 A.
 
 Brady
 
 and Its Progeny
 

 ¶ 35. In
 
 Brady v. Maryland,
 
 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that due process requires the government to disclose favorable, material evi
 
 *1216
 
 dence not otherwise discoverable through due diligence. We note Bridgeman neither suggests the State or its investigators had prior knowledge of Jackson’s conviction, nor does he claim the prosecution in any way violated its affirmative duty to provide impeachment evidence under
 
 Brady
 
 and its progeny. Still we find it prudent to point out he has no cognizable claim under this line of cases.
 

 ¶ 36. The government’s duty under
 
 Brady
 
 extends to evidence impeaching the credibility of government witnesses.
 
 Giglio v. United States,
 
 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). A
 
 Brady
 
 violation can occur even if evidence is withheld in good faith.
 
 Brady,
 
 373 U.S. at 87, 83 S.Ct. 1194. But a
 
 Brady
 
 suppression only occurs when prosecutors fail to turn over evidence known to the government or police investigators.
 
 Youngblood v. West Virginia,
 
 547 U.S. 867, 869-70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (citing
 
 Kyles v. Whitley,
 
 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (“[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.”)).
 

 ¶ 37. Because the judgment and sentencing order erroneously listed Jackson’s name as “Johnson,” and absent the slightest allegation of government misconduct, we find no
 
 Brady
 
 suppression occurred.
 

 ¶ 38. But even assuming an impermissible suppression, Bridgeman must convince us there is a “reasonable probability” the result of his trial would have been different had the conviction been disclosed to the defense.
 
 Kyles,
 
 514 U.S. at 434, 115 S.Ct. 1555. Under this hypothetical circumstance, “[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.”
 
 Id.
 
 Based on the evidence before us, including the victim’s testimony, the corroborative testimony of Lieutenant Burnside, who accompanied Jackson during one of the interviews, and the favorable inferences drawn from Dr. Bacon’s and Dr. Foose’s medical testimony, we find the merely impeaching evidence does not undermine confidence in the jury’s guilty verdict. Therefore, even assuming impermissible suppression, the touchstone of materiality is not met, and no
 
 Brady
 
 violation exists.
 

 ¶ 39. Because there is no cognizable
 
 Brady
 
 claim, we review Bridgeman’s post-trial discovery of Jackson’s embezzlement conviction under Mississippi’s standard for newly discovered evidence.
 

 B. Newly Discovered Evidence
 

 ¶ 40. A defendant is entitled to a new trial based on newly discovered evidence where: (1) the evidence will probably produce a different result or verdict; (2) the evidence has been discovered since trial and could not have been discovered before trial by the exercise of due diligence; (3) it is material to the issue; and (4) it is not merely cumulative or impeaching.
 
 Ormond v. State,
 
 599 So.2d 951, 962 (Miss.1992). We review a trial court’s grant or denial of a motion for a new trial for abuse of discretion.
 
 Id.
 

 1141. The circuit judge cited this four-pronged test and found “the newly discovered evidence would not change the result, could have been discovered before trial by exercising due diligence, is not material to the issue, and is merely impeaching.” He also noted other testimony and evidence corroborated Jackson’s testimony regarding L.H.’s disclosure of sexual abuse.
 

 ¶ 42. Our supreme court addressed the issue of post-trial discovery of impeachment evidence in
 
 Ormond.
 
 In
 
 Ormond,
 
 
 *1217
 
 the defendant was charged with raping his girlfriend’s child. The assault allegedly occurred in February 1988. Around one month later, a doctor diagnosed the young girl with gonorrhea.
 
 Ormond,
 
 599 So.2d at 954. At trial, the State offered medical evidence that the defendant had been diagnosed with the same sexually transmitted disease.
 
 Id.
 
 at 957-58. The mother testified she too was tested for gonorrhea in 1988, but she claimed results showed she did not have the disease.
 
 Id.
 
 at 954. Following trial, defense counsel alleged the mother had been dishonest about having the disease around the time of the assault.
 
 Id.
 
 at 961-62. The trial court held a hearing on the post-trial motion where the mother’s medical records were offered, which showed she had been diagnosed and provided notice in 1988 that she had gonorrhea.
 
 Id.
 
 The supreme court found this newly discovered evidence did not warrant reversal because it only served to impeach the mother’s testimony.
 
 Id.
 

 ¶ 43. The holding in
 
 Ormond
 
 comports with the widely accepted principle that the post-trial discovery of impeachment evidence is not normally a basis for granting a motion for a new trial.
 
 See, e.g., Mesar-os! v. United States,
 
 352 U.S. 1, 9, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956);
 
 United States v. Reedy,
 
 304 F.3d 358, 372 (5th Cir.2002) (upholding district court’s denial of motion for new trial based on newly discovered impeachment evidence);
 
 United States v. Pena,
 
 949 F.2d 751, 758 (5th Cir.1991) (“Evidence which merely discredits or impeaches a witnesses] testimony does not justify a new trial.”);
 
 United States v. Champion,
 
 813 F.2d 1154, 1171 (11th Cir. 1987) (“Newly discovered impeaching evidence is insufficient to warrant a new trial.”);
 
 United States v. Johnson,
 
 596 F.2d 147,148^9 (5th Cir.1979).
 

 ¶ 44. Given L.H.’s testimony, the medical evidence, and the abundance of additional corroborating testimony convincingly showing Bridgeman’s guilt, we are unable to find that having knowledge of Jackson’s conviction, the jury would have probably found Bridgeman not guilty. Because we conclude the newly discovered evidence is merely impeaching, we find no abuse of discretion by the circuit court’s denial of Bridgeman’s motion for a new trial.
 

 III. Sufficiency and Weight of the Evidence
 

 ¶45. Bridgeman argues his conviction is not supported by sufficient evidence or the weight of the evidence. When addressing the legal sufficiency of evidence, we consider all evidence in a light most favorable to the State.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). Credible evidence consistent with guilt must be accepted as true. The State receives the benefit of all favorable inferences reasonably drawn from the evidence.
 
 Jones v. State,
 
 20 So.3d 57, 64 (¶ 16) (Miss. Ct.App.2009) (citing
 
 Hughes v. State,
 
 983 So.2d 270, 275-76 (¶¶ 10-11) (Miss.2008)). The jury resolves matters of weight and credibility. Reversal is proper when reasonable and fair-minded jurors could only find the accused not guilty.
 
 Id.
 
 Our primary duty in considering the sufficiency of the evidence is to determine whether from the evidence presented, it would be impossible for a reasonable juror to find the defendant guilty.
 
 Ducksworth v. State,
 
 767 So.2d 296, 301 (¶10) (Miss.Ct.App. 2000).
 

 ¶ 46. The standard differs slightly when reviewing a claim based on the weight of the evidence challenging a trial court’s denial of a motion for a new trial. Under this standard, “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an uncon
 
 *1218
 
 scionable injustice.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18). This court evaluates the evidence in the light most favorable to the verdict.
 
 Id.
 
 And we are required to accept all evidence consistent with the defendant’s guilt as true, along with any reasonable inferences that might be drawn from the evidence.
 
 Young v. State,
 
 891 So.2d 813, 821 (¶ 21) (Miss.2005). “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Bush,
 
 895 So.2d at 844 (¶ 18).
 

 ¶ 47. To sustain a conviction under Mississippi Code Annotated section 97-3-65(l)(b) (Supp.2009), the State must prove beyond a reasonable doubt that Bridgeman had “sexual intercourse with a child ... under the age of fourteen (14) years[.]” The statute also requires proof that the child is twenty-four or more months younger than the defendant and is not his spouse.
 
 Id.
 
 “Neither the victim’s consent nor the victim’s lack of chastity is a defense to a charge of statutory rape.” Miss.Code Ann. § 97-3-65(2) (Supp.2009). The element of “sexual intercourse” is met where there is “a joining of the sexual organs of a male and female human being in which the penis of the male is inserted into the vagina of the female[.]” Miss. Code Arm. § 97-3-65(6) (Supp.2009).
 

 ¶ 48. Bridgeman was more than thirty years older than L.H. and not her spouse. And although she used a more age-appropriate term, “private part,” L.H. testified at trial that Bridgeman committed various sexual acts involving penetration of both his finger and penis into her vagina on or near the charged dates. Several witnesses who spoke with L.H. after the alleged sexual-abuse incidents also testified L.H. disclosed that Bridgeman had sexually assaulted her and that penetration occurred. Medical evidence likewise created a strong inference that Bridgeman had given L.H. a sexually transmitted disease. Thus, sufficient evidence exists to meet section 97-3-65(6)’s definition of “sexual intercourse.”
 

 ¶ 49. Viewing the evidence in the light most favorable to the guilty verdict, we find the testimony and medical evidence strongly support the two statutory rape convictions. Allowing the verdict to stand would not sanction an unconscionable injustice. Accordingly, we find the verdict is not against the overwhelming weight of the evidence.
 

 ¶ 50. For these reasons, we affirm.
 

 ¶ 51. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF STATUTORY RAPE AND SENTENCE OF TWENTY-FIVE YEARS ON EACH COUNT, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . To protect the identity of the child victim, we have substituted initials in place of her name.
 

 [2]
 

 . The
 
 Wright
 
 factors include: "(1) whether there is an apparent motive on declarant’s part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant’s faulty recollection is remote; (8) certainty that the state
 
 *1214
 
 ments were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant’s age, knowledge, and experience make it unlikely that the declarant fabricated.” M.R.E. 803(25) cmt.